COMMONWEALTH of Pennsylvania,
Appellant

v.

Stanley POLAND, Appellee.

Commonwealth of Pennsylvania,
Appellee

v.

**Stanley Poland, Appellant.**

Superior Court of Pennsylvania.

Argued May 10, 2011.

Filed July 29, 2011.

Melanie J. Taylor, Assistant District Attorney, Philadelphia, for Commonwealth.

John C. Della Rocca, Philadelphia, for Poland.

BEFORE: DONOHUE, MUNDY, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:

The Commonwealth and Stanley Poland (Poland) both appeal from the January 20, 2010 judgment of sentence of 11½ to 23 months' house arrest, following Poland's conviction of conspiracy to commit aggravated assault. Also before us is the Commonwealth's petition to quash Poland's cross appeal. We deny the Commonwealth's petition to quash, vacate the judgment of sentence, and remand this case for application of 42 Pa.C.S. § 9713(a) at resentencing.

On the evening of April 2, 2008, Tyesha Tazwell (Tazwell) walked through the Gallery at 8th and Market Streets in Philadelphia, Pennsylvania towards the Southeastern Pennsylvania Transportation Authority (SEPTA) subway station located therein. Along the way, Tazwell passed a group of a dozen or more individuals, including Stanley Poland, most of

---

* Retired Senior Judge assigned to the Superior Court.

whom wore identical shirts commemorating a deceased, mutual friend. Once past them, Tazwell was kicked to the ground, then punched and kicked by one half of the members of the group while the other half cheered them on. The assailants then fled to a nearby subway train.

Face battered, missing a tooth and a piece of hair, Tazwell made her way to a SEPTA cashier's booth after gathering those of her belongings that remained. SEPTA police escorted Tazwell to the SEPTA station at which the train where the individuals fled had been stopped. Tazwell identified the individuals who were present at the assault, and those who actually had assaulted her.

Poland was arrested and charged with robbery, aggravated assault, conspiracy to commit robbery, and conspiracy to commit aggravated assault. There was conflicting evidence offered at trial about whether Poland was one of the assailants, was one who encouraged the assailants, or had tried to stop one of the assailants. A jury convicted Poland of conspiracy to commit aggravated assault and acquitted him of the remaining charges. Poland was sentenced on January 20, 2010. The Commonwealth filed a timely post-sentence motion on January 21, 2010, raising the issue of an illegal sentence, which the trial court denied on January 22, 2010. The Commonwealth filed a timely notice of appeal and statement of matters complained of on appeal raising the same issue.

On April 22, 2010, the trial court appointed counsel to represent Poland on this appeal. Poland's counsel entered an appearance on April 29, 2010, and filed a statement of matters complained of on appeal on June 7, 2010. At some point, Poland's counsel served the trial court with, but did not file as part of the record, a petition to file a cross-appeal *nunc pro tunc*. On February 24, 2011, the trial court entered an order granting the petition. Poland filed his notice of cross appeal on February 25, 2011. On March 14, 2011, the Commonwealth filed a petition to quash Poland's cross appeal.

In its appeal, the Commonwealth raises one question for our review: "Did the lower court impose an illegal sentence under 42 Pa.C.S. § 9713?" Commonwealth's Brief at 4.

Poland raises the following questions on appeal:

[1.] WAS NOT THE EVIDENCE INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION FOR CRIMINAL CONSPIRACY TO COMMIT AGGRAVATED ASSAULT WHERE THE FACTS SHOWED NO MORE THAN A SPONTANEOUS AFFRAY?

[2.] DID NOT THE LOWER COURT ERR IN FAILING TO INSTRUCT THE JURY *SUA SPONTE* REGARDING GOOD CHARACTER EVIDENCE PRESENED BY [POLAND] AT TRIAL, AND WAS NOT TRIAL COUNSEL INEFFECTIVE FOR FAILING TO REQUEST THE INSTRUCTION?

Poland's Brief at 6. We note that the trial court addressed all of the issues raised by the parties in its Rule 1925(a) opinion.

█ Before we turn to the issues raised by Poland, we first address the Commonwealth's petition to quash Poland's cross appeal. Although acknowledging that the trial court granted Poland leave to file a cross appeal *nunc pro tunc*, the Commonwealth argues that once it filed its notice of appeal on February 19, 2010, Rule 1701 of the Rules of Appellate Procedure divested

the trial court of jurisdiction to entertain Poland's motion.[1]

Rule 1701(a) provides, in relevant part: "[e]xcept as otherwise prescribed by these rules, after an appeal is taken . . . , the trial court . . . may no longer proceed further in the matter." Pa.R.A.P. 1701(a). In support of its argument, the Commonwealth also cites *Bell v. Kater*, 839 A.2d 356, 357 (Pa.Super.2004), in which this Court quashed the appeal, holding that the trial court order allowing a *nunc pro tunc* appeal was a nullity pursuant to Rule 1701, as it was entered after the appellant had already filed a notice of appeal on the same issues.

The Commonwealth has overlooked subsection (c) of Rule 1701, which provides that the stay imposed by subsection (a) is "[l]imited to matters in dispute" on the pending appeal. "Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, . . . the appeal . . . shall operate to prevent the trial court . . . from proceeding further with only such item, claim or assessment. . . ." Pa.R.A.P. 1701(c). *See Commonwealth v. Moyer*, 421 Pa.Super. 102, 617 A.2d 744, 746–747 (1992) (holding that the trial court had jurisdiction to sentence the appellant on robbery and burglary charges while an appeal related to a murder conviction was pending).

Because the only matter disputed by the Commonwealth in filing its appeal was whether the trial court erred in refusing to apply the mandatory minimum sentence discussed *infra*, we hold that Rule 1701 did not divest the trial court of jurisdiction to grant Poland's petition for leave to file a cross-appeal *nunc pro tunc*. The Com-

monwealth's petition to quash is therefore denied.

■ We address Poland's issues first, beginning with his challenge to the sufficiency of the evidence to sustain his conviction for conspiracy to commit aggravated assault. Our standard of review in determining whether the evidence was sufficient

> requires that we consider the evidence admitted at trial in a light most favorable to the Commonwealth, since it was the verdict winner, and grant it all reasonable inferences which can be derived therefrom. The evidence, so viewed, will be deemed legally sufficient to sustain the jury's conviction on appeal only if it proves each element of the offense charged beyond a reasonable doubt.

*Commonwealth v. Briggs*, 12 A.3d 291, 306 (Pa.2011) (citations omitted). Poland does not deny that the violence wreaked upon Tazwell constituted an aggravated assault. Rather, he argues that the evidence was insufficient to establish that he conspired with the others to commit the assault.

> A conspiracy conviction requires proof of (1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, i.e., the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

*Commonwealth v. Galindes*, 786 A.2d 1004, 1010 (Pa.Super.2001) (internal quota-

---

1. As noted above, Poland's petition for leave to file a cross appeal *nunc pro tunc* is not part of the certified record, and thus we do not know the reason why it was granted. Because the Commonwealth does not challenge

the sufficiency of the basis relied upon by the trial court in granting Poland's request for relief, that question is not before us, and we decline to address it.

tions and citations omitted). *See also* 18 Pa.C.S. § 903(a).

In arguing that the Commonwealth failed to prove that Poland agreed with any of Tazwell's assailants to assault her, Poland relies chiefly upon *Commonwealth v. Kennedy*, 499 Pa. 389, 453 A.2d 927 (1982). In that case, Kennedy and Williams, who had been drinking, were at Kennedy's apartment, where the electricity was not working. Kennedy confronted Capellupo, the landlord, about the lack of power. After the electricity was restored, Kennedy sent Williams to inform Capellupo of this fact. When Williams did not return for half an hour, Kennedy went looking for him. "An affray ensued," during which Kennedy and Williams beat Capellupo. Kennedy admitted to participation in the beating, citing pre-existing animosity as his motive. Kennedy was convicted of, *inter alia*, conspiracy. Our Supreme Court reversed the conspiracy conviction, stating

> the Commonwealth's evidence clearly established that a brawl occurred in which defendant and Williams were participants. This, however, does not in itself demonstrate the existence of a conspiracy. As the foregoing summary of the evidence in the light most favorable to the Commonwealth reveals, a *mere association* between defendant and Williams was shown, along with their simultaneous participation in the assault upon Capellupo. Nothing in the relation, conduct, or circumstances of the parties, however, is indicative of there having been an agreement, explicit or implicit, as to commission of the assault. The fact that the affray erupted from an argument, the manner in which the beating was inflicted, and the overt acts of the participants prior to and concurrent with commission of the assault fail to bespeak concert of action indicative of a common design. Indeed, the evidence

> reveals only that defendant and Williams became embroiled in an argument with Capellupo, and that this argument immediately escalated into a violent confrontation in which defendant and Williams inflicted beatings upon Capellupo. These events being perfectly consistent with the presumption that defendant and Williams acted independently and spontaneously, and there being no evidence upon which existence of the common understanding or agreement requisite to the charge of conspiracy might properly be inferred, the verdict of guilt as to conspiracy must be regarded as inadequately supported by the evidence.

*Id.* at 930.

Poland argues that this instant case is "indistinguishable in any material way" from *Kennedy*. We disagree. More factually similar is *Commonwealth v. French*, 396 Pa.Super. 436, 578 A.2d 1292, 1294–1295 (1990). In *French*, a police officer arrived to find French and three others assaulting an African–American man. After more police officers arrived and stopped the attack, French and her companions commenced shouting racially-insensitive epithets at the officers and refused to leave the scene. Two of French's cohorts physically attacked one of the officers, then struggled to avoid being handcuffed. All the while, French and the fourth member of her group circled the officers and continued verbally abusing the officers. French also punched one of the officers in the face. *Id.* at 1293. On appeal, French challenged her conspiracy conviction, relying upon *Kennedy, supra.* We distinguished *Kennedy* as follows:

> In *Kennedy*, the Supreme Court found ... nothing in the relationship of the parties to indicate an implicit or explicit agreement to engage in an assault and found that although the parties acted

simultaneously, they nevertheless acted independently.

Here, on the other hand, all the co-conspirators acted as a group in concert. Before the police arrived, they acted together to commit an assault on the lone black man. They were told as a group to disperse but instead they decided, as a group, to stay and engage in joint criminal conduct in which each was spurring the others on toward a common criminal purpose. It is unnecessary to prove an explicit and formal agreement between the conspirators. The agreement necessary to support a conspiracy conviction can be wholly tacit so long as the surrounding circumstances confirm that the parties have decided to act in concert. In this case, the actors' relationships and their conduct before, during and after the criminal episode established a unity of criminal purpose sufficient for the jury to find conspiracy beyond a reasonable doubt.

*Id.* at 1294–1295.

Poland did not find Tazwell having an argument with others and join in based on pre-existing animosity towards her, as was the case in *Kennedy*. Poland was part of a group when Tazwell was unfortunate enough to walk by them; Poland was part of that group when individual members were either participating in the beating or cheering the assailants on; Poland and the others fled as a group after the assault. As in *French*, "the actors' relationships and their conduct before, during and after the criminal episode established a unity of criminal purpose sufficient for the jury to find conspiracy beyond a reasonable doubt." *Id.* Poland's argument as to sufficiency of the evidence is without merit.

■ Poland next argues that the trial court erred in not *sua sponte* instructing the jury that it could rely upon evidence of Poland's good character alone in finding reasonable doubt as to his guilt. In the alternative, Poland argues that his trial counsel was ineffective for failing to request this charge.

"No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647. Poland cites to no cases to support his position that the trial court should have given the instruction absent his request. As such, the trial court committed no error in failing to do so.

■ As for his argument that counsel was ineffective for failing to request a charge related to his good character, that is an issue for a post-conviction relief petition, not for this direct appeal. *See, e.g., Commonwealth v. West*, 937 A.2d 516, 522 (Pa.Super.2007) (citing *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 739 (2002)) ("As this case is on direct appeal, we will not decide the issue of counsel's ineffectiveness. Rather, we dismiss that issue without prejudice. Appellant may raise claims of ineffectiveness in a PCRA petition.") (internal citations omitted).

■ We now turn to the Commonwealth's appeal and the question of whether the trial court imposed an illegal sentence, bearing the following in mind:

The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

*Commonwealth v. Mears,* 972 A.2d 1210, 1211 (Pa.Super.2009) (quoting *Commonwealth v. Leverette,* 911 A.2d 998, 1001–1002 (Pa.Super.2006)).

■ Section 9713(a) of Title 42 mandates that a person convicted of a crime of violence be sentenced to a minimum of five years of total confinement if the crime occurs "in or near public transportation." 42 Pa.C.S. § 9713(a). Conspiracy to commit aggravated assault is within the definition of a "crime of violence." *See* 42 Pa.C.S. § 9714(g). Section 9713 provides the following guidance about the meaning of "in or near public transportation."

> [A] crime shall be deemed to have occurred in or near public transportation if it is committed in whole or in part in a vehicle, station, terminal, waiting area or other facility used by a person, firm, corporation, municipality, municipal authority or port authority in rendering passenger transportation services to the public or a segment of the public or if it is committed in whole or in part on steps, passageways or other areas leading to or from or in the immediate vicinity of such a public transportation vehicle, station, terminal, waiting area or other facility.

42 Pa.C.S. § 9713(b).

There is no dispute that the assault on Tazwell did not occur on property owned by SEPTA. It occurred in a public corridor in the Gallery, an area that contains shops and other businesses, that leads to, *inter alia,* glass double doors that separate SEPTA's station from the Gallery. The trial court, in sentencing Poland to 11½ to 23 months' house arrest followed by seven years of probation, determined that the clear boundary between the Gallery and the SEPTA station rendered Section 9713 inapplicable: "Had there not been such a clear delineation between the properties, perhaps I would agree with an argument

that one area just naturally flowed into the other. But there are, as [the] photographs show, glass doors that separate the property.... [T]hose glass double doors clearly define the end of one property and the beginning of another." Trial Court Opinion, 9/20/2010, at 7.

The Commonwealth argues that the crime clearly occurred in the "immediate area" of the SEPTA station, in a passageway "leading to or from" the SEPTA station, and thus implicates the mandatory minimum sentence provided in Section 9713(a), which is not limited to public transportation property. Commonwealth's Brief at 11. Poland argues that, construing the penal statute strictly as we must, *see* 1 Pa.C.S. § 1928(b)(1), the trial court properly concluded that "the assault in question occurred beyond the area covered by Section 9713." Poland's Brief at 13.

■ We begin our analysis by noting that, in construing statutes, our goal is to effectuate the intention of the legislature and to give effect to all provisions of the statute. 1 Pa.C.S. § 1921(a). When the words of the statute are clear, we must apply the letter of the law. 1 Pa.C.S. § 1921(b).

We have before had occasion to consider the General Assembly's intent in enacting Section 9713:

> Section 9713 of the Act was designed to promote and protect users and providers of public transportation services.... Furthermore, the legislature intended to protect municipal interests in public transportation systems for such systems are often funded by tax revenue or licensed by the state or municipalities. Since public transportation is utilized by the public at large, these people must feel safe and protected while riding or waiting for public vehicles. In order to further these goals, the legislature im-

posed a more severe punishment upon those who committed crimes on or near public transportation as it is within its province to do. At the time the Act was passed by our Senate it was that legislative body's general intent to eradicate violent crime by eliminating inconsistency and leniency in sentencing. *Commonwealth v. Jones,* 374 Pa.Super. 431, 543 A.2d 548, 552 (1988) (citations omitted).

The trial court construed Section 9713(a) to apply only to "those crimes committed on the property of the public transportation authority. On it." N.T., 1/20/2010, at 20. This interpretation disregards the plain language of the statute, which states that it is applicable if a crime is committed on public transportation property, "**or if it is committed in whole or in part on steps, passageways or other areas leading to or from or in the immediate vicinity**" of a public transportation facility. 42 Pa.C.S. § 9713(a) (emphasis added). The trial court's interpretation, rather than giving effect to all provisions of the statute, ignores the disjunctive "or" and the phrase "in the immediate vicinity." The language is clear: the crime need not occur on public transportation property for the mandatory minimum sentence to be applicable.

The assault in this case took place in a passageway leading to and from a SEPTA station, in the immediate vicinity of the SEPTA station, while the victim was on her way to catch the SEPTA train home.[2] After the assault, the perpetrators immediately fled onto a SEPTA train. Given the legislature's intent to make people feel safe using public transportation, and to punish more harshly crimes that discourage the public from doing so, we hold that the five-year mandatory minimum sentence applies to the crime in the instant case. Therefore, pursuant to 42 Pa.C.S. § 9713(e), we vacate the trial court's sentence and remand the case for imposition of the mandatory minimum sentence of no less than five years' total confinement.

Petition to Quash Cross Appeal denied. Judgment of sentence vacated. Case remanded for resentencing consistent with this opinion. Jurisdiction relinquished.

---

2. We acknowledge that there were other establishments in the immediate vicinity of the location where Tazwell was assaulted, and that the passageway led to and from places other than the SEPTA station. However, the language of Section 9713 does not limit its application to passageways that lead exclusively to public transportation facilities, or to areas in the immediate vicinity of facilities that have absolutely no other possible destinations around them.