J-S04035-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT C. WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 252 MDA 2014 |

Appeal from the Judgment of Sentence Entered November 16, 2012
in the Court of Common Pleas of York County,
Criminal Division, at No(s): CP-67-CR-0002019-2012

BEFORE:    BOWES, ALLEN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED MARCH 09, 2015**

Robert C. Williams (Appellant) appeals from a judgment of sentence entered after a jury convicted him of one count of second-degree murder and two counts of robbery.  We affirm.

The procedural background underlying this matter can be summarized as follows.  Appellant was arrested in connection with his involvement in the murder and robbery of Stanley Cotton and the robbery of Bobby Barnes.  A jury convicted him of these crimes, and on November 16, 2012, the trial court sentenced Appellant to life in prison.  Appellant did not pursue a direct appeal.

However, Appellant timely filed a petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, which resulted in the reinstatement of his right to a direct appeal.  Appellant timely filed a notice

_____
*Retired Senior Judge assigned to the Superior Court.

of appeal. The trial court directed Appellant to comply with Pa.R.A.P. 1925(b), and Appellant subsequently filed a 1925(b) statement. He later sought to file a supplemental 1925(b) statement. The trial court allowed Appellant to file such a statement, and the court issued an opinion pursuant to Pa.R.A.P. 1925(a).

In his brief to this Court, Appellant asks us to consider the following questions:

> I. Whether the Commonwealth presented evidence sufficient to prove beyond a reasonable doubt that [] Appellant acted as an accomplice to the criminal homicide of Stanley Cotton?
>
> II. Whether the Commonwealth presented evidence sufficient to prove beyond a reasonable doubt that [] Appellant acted as an accomplice to the robbery of Stanley Cotton?
>
> III. Whether the Commonwealth presented evidence sufficient to prove beyond a reasonable doubt that [] Appellant acted as an accomplice to the robbery of Bobby Barnes?

Appellant's Brief at 4 (unnecessary capitalization omitted).

All of these issues challenge the sufficiency of the evidence presented by the Commonwealth at trial.

> Our standard of review in determining whether the evidence was sufficient

> requires that we consider the evidence admitted at trial in a light most favorable to the Commonwealth, since it was the verdict winner, and grant it all reasonable inferences which can be derived therefrom. The evidence, so viewed, will be deemed legally sufficient to sustain the jury's conviction on appeal only if it proves each element of the offense charged beyond a reasonable doubt.

*Commonwealth v. Poland*, 26 A.3d 518, 521 (Pa. Super. 2011) (citation omitted).

The Commonwealth's theory of the case was that Appellant lured Stanley Cotton, who was accompanied by Bobby Barnes, into an apartment building under the guise that Appellant wanted to purchase crack cocaine from Cotton. According to the Commonwealth, Appellant's accomplice (the shooter), whose identity was unknown to police at the time of trial, was waiting in ambush in the apartment building. The Commonwealth alleged that, after Appellant, Cotton, and Barnes entered the apartment building, the shooter brandished a gun, the shooter shot Cotton, and Appellant and the shooter robbed Cotton and Barnes. The crux of Appellant's argument on appeal is that, at trial, the Commonwealth failed to present sufficient evidence to prove that he was the shooter's accomplice. We disagree.

In terms of his robbery convictions, the jury found Appellant guilty of violating 18 Pa.C.S. § 3701(a)(1)(ii), which provides, "A person is guilty of robbery if, in the course of committing a theft, he … threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]"

> "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.[] § 2502(b). "Perpetration of a felony" is defined as: "The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa.C.S.[] § 2502(d).

\*\*\*

An accomplice is also legally accountable for the conduct of the other person involved in committing the crimes. 18 Pa.C.S.[] § 306(b)(3). The Crimes Code defines an accomplice as follows:

A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S.[] § 306(c). "Both requirements may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid." ***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1251 (Pa. Super. 2005) (*en banc*) (citations and quotations omitted). "[P]roof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." ***Id.*** at 1253–54 (citation omitted).

***Commonwealth v. Knox***, 50 A.3d 749, 754-56 (Pa. Super. 2012).

The trial court analyzed Appellant's sufficiency claims as follows.[1]

In this case, the record indicates the following[.] On November 10, 2011, [Appellant] went to 612 Market St. [in York, Pennsylvania], to Darrel[l] [] Massengill's apartment, and asked Darrel[l] to call Stanley Cotton [] for him so that

---

[1] The trial court presented parts of its opinion in bullet points. We have reorganized those portions of the court's opinion into paragraphs.

- 4 -

[Appellant] could talk to Stanley about purchasing some drugs. Darrell placed the call to Stanley and handed [Appellant] the phone. While [Appellant] was on the phone, Darrell heard a noise in the hallway. When Darrell opened the door and looked out, he saw a guy just standing there right outside his door, and described him as young, and wearing a skull cap and black coat. Darrell said "what's up," the guy nodded, and Darrell shut the door to his apartment. From the foregoing, the jury could reasonably infer that the guy in the hallway was with [Appellant] and was waiting for him.

The record also indicates the following[.] Shortly after Darrell saw the guy in the hall and shut the door, [Appellant] left Darrell's [apartment] to meet Stanley to make the drug deal. Bobby Barnes, who had been drinking with Stanley at the Majestic (a restaurant/bar just a few blocks from Darrell's [apartment]) left the bar with Stanley on foot after Stanley received a phone call. When Bobby and Stanley met up with [Appellant], Stanley asked [Appellant] why he did not walk to meet him (Stanley), to which [Appellant] responded that whoever he was buying for would not give him the money, and that they would have to go to 612 Market Street to get it. Given the foregoing, the jury could reasonably infer that the purpose of [Appellant's] statement about having to go to 612 Market to get the money was to lure Stanley and Bobby into the stairwell.

The record further indicates that[ w]hen the three individuals arrived at 612 Market, [Appellant] opened the door, Stanley went in, followed by [Appellant] and Bobby Barnes, and they started going up the steps. Someone (the shooter) came out of the first floor hallway (to the right of the stairs) and fired a gun. Bobby Barnes described the shooter as wearing a hoodie, mask, and dark clothing. The shooter told them to get down on the steps. The shooter [threatened to shoot Bobby Barnes and Stanley Cotton and] told [Appellant] to go through their pockets. [Appellant] went through Stanley's pockets and took money out. Bobby Barnes gave the shooter his wallet. Bobby Barnes heard the shooter tell [Appellant] to get out. [Appellant] ran out the rear door. The shooter hit Bobby in the head with the gun and also on his hand, and as he did so, the gun went off a second time. The shooter took Bobby Barnes' coat and hat. [During the robbery, Stanley Cotton was shot and killed.]

Both the shooter and "the guy in the hallway" outside Darrell's apartment while [Appellant] was setting up the drug buy, were described as wearing dark clothing, and the guy in the hallway appeared to be with [Appellant] and waiting for him while [Appellant] set up the drug buy. Therefore, the jury could reasonably have inferred that the "guy in the hallway" and the shooter were the same person.

Moreover, in an interview with [Appellant] approximately eight days after the shooting, he told Detectives that he was also injured during the robbery and that the shooter had hit him in the head with the gun.[2] However, when Detective Fetrow examined [Appellant's] head by feeling it for any bumps or lacerations and by doing a visual inspection of his head, he could not discern any injury and [Appellant] did not mention being injured during the incident until Detective Myers asked him why both people that were with [him] got hurt, [but he did not get hurt.] From this testimony, the jury could have reasonably concluded that [Appellant] was not, in fact, injured. Furthermore, the fact that [Appellant] was the only one of the three (other than the shooter) who was not injured or killed, lends credence to the contention that [Appellant] was acting in concert with the shooter.

In addition, the police found two $10.00 bills on the ground outside of the rear exit door, where [Appellant] admitted that he had exited the building. While [Appellant] claims that he gave the money that he took from the victim to the shooter, the jury could reasonably infer that the money found on the ground outside was money that [Appellant] had taken from Stanley Cotton, but dropped as he was running out of the building.

Given the foregoing, the evidence was sufficient for the jury to conclude that [Appellant] intended to promote or facilitate the robbery of Stanley Cotton and Bobby Barnes with the shooter, that he aided the shooter in committing the robbery, and that, therefore, [Appellant] was an accomplice to the robbery of Stanley Cotton and Bobby Barnes.

---

[2] Appellant's statement to police was read into the record. In that statement, Appellant maintained that he too was a robbery victim of the shooter. The jury clearly did not believe Appellant's version of events.

Trial Court Opinion, 4/16/2014, at 3-7.[3]

The facts provided by the trial court accurately reflect the relevant evidence admitted at trial when that evidence is viewed in a light most favorable to the Commonwealth. Furthermore, we agree with the trial court that, when this evidence is viewed in the proper light, it sufficiently demonstrates that Appellant acted as the shooter's accomplice in the robberies, as that term is defined in 18 Pa.C.S. § 3701(a)(1)(ii), of Stanley Cotton and Bobby Barnes. Consequently, because Stanley Cotton's murder occurred during the perpetration of these robberies, the Commonwealth presented sufficient evidence to convict Appellant of second-degree murder.

For these reasons, Appellant is due no relief. We, therefore, affirm the judgment of sentence.

---

[3] The majority of the evidence discussed by the trial court came from the testimony of Bobby Barnes and Darrell Massengill.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 3/9/2015