J-S86009-16

2016 PA Super 265

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                  :             PENNSYLVANIA
                                         :

                        v.                   :

ISIAH EDWARD JAM TOOKS         :

               Appellant       :     No. 2025 WDA 2015

Appeal from the Judgment of Sentence November 30, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0011051-2014,
CP-02-CR-0011446-2014


BEFORE:  GANTMAN, P.J., MOULTON, J., and STEVENS[*], P.J.E.

OPINION BY STEVENS, P.J.E.:           **FILED NOVEMBER 29, 2016**

Appellant Isiah Edward Jam Tooks appeals the judgment of sentence entered in the Court of Common Pleas of Allegheny County on November 30, 2015, following a jury trial.  We affirm.

The trial court aptly set forth the relevant procedural history and facts herein as follows:

> This is a direct appeal from the judgment of sentence entered on November 30, 2015, following [Appellant's] convictions at the above-captioned case numbers. At the criminal information filed at CC# 2014-11051, [Appellant] was charged with Robbery-Serious Bodily Injury (18 Pa. C.S.A. §3701(a)(1) (ii)) (Count One); Kidnapping (18 Pa. C.S.A. §2901(a)(1)) (Count Two); Unlawful Restraint (18 Pa. C.S.A. §2902(a)(1)) (Count Three); Terroristic Threats (18 Pa. §2706 (a)(1)) (Count Four); Simple Assault (18 Pa. C.S.A. §2701(a)(3) (Count Five) and Conspiracy to Commit Robbery- Serious Bodily Injury (18 Pa. C.S.A. §903(c)) (Count Six). At the criminal

---

* Former Justice specially assigned to the Superior Court.

information filed at CC# 2014-11446, [Appellant] was charged with Criminal Solicitation (18 Pa. C.S.A. §902(A)) (Count One); Conspiracy to Commit Criminal Homicide and/or Intimidation of Witnesses or Victims (18 Pa. C.S.A. §903(a)(1)) (Count Two); and Intimidation of Witnesses or Victim (18 Pa. C.S.A. §4952) (Count Three).

A jury trial was conducted on these two (2) cases between August 11, 2015 and August 18, 2015. At the conclusion of trial, [Appellant] was found not guilty at Count One (Robbery) and Count Two (Kidnapping), and guilty of all of the remaining charges, including Count Three (Unlawful Restraint), Count Four (Terroristic Threats), Count Five (Simple Assault), and Count Six (Conspiracy to Commit Robbery) at CC# 2014-11051. [Appellant] was convicted of all counts at the information filed at CC# 2014-11446. Sentencing was deferred to allow for the preparation of a Presentence Investigation Report.

On August 19, 2015, the Commonwealth filed a "Notice of Intention to Proceed Under the Mandatory Provisions of 42 Pa. C.S.A. §9714." On October 28, 2015, [Appellant] filed a "Motion in Opposition to the Application of Mandatory Minimum Sentence." [Appellant's] motion was heard during the sentencing hearing conducted on November 30, 2015. After considering the arguments and evidence presented at the sentencing, the court found that the ten (10) year mandatory minimum sentence under §9714 was applicable in light of [Appellant's] prior conviction for Robbery of a Motor Vehicle and [Appellant's] instant conviction for Conspiracy to Commit Robbery- Serious Bodily Injury. Accordingly, the court sentenced [Appellant] to a term of imprisonment of ten (10) to twenty (20) years at Count Six of the information filed at CC# 2014 -11051. [Appellant] was ordered to have no contact with the victim, Kevin Miller, and he was further ordered to pay restitution to the victim in the amount of $104. No further penalty was imposed at the remaining counts of conviction at that information, and [Appellant] received 483 days of time credit towards his sentence.

At CC # 2014-11446, this court imposed a term of imprisonment of six (6) to twelve (12) years at Count One. This sentence was ordered to run concurrently with [Appellant's] sentence at CC# 2014-11051. A consecutive five (5) year term of probation was imposed at Count Three. No further penalty was imposed at Count Two of the information, and [Appellant] was ordered to have no contact with the victim. No post-

sentence motions were subsequently filed. This timely appeal followed.

On April 4, 2016, [Appellant] filed a timely[1] Concise Statement of Errors Complained of on Appeal ("Concise Statement "), raising only one (1) issue for review: . . . .

\*\*\*

[Appellant's] allegation of error is without merit. For the reasons that follow, [Appellant's] conviction for Conspiracy to Commit Robbery-Serious Bodily Injury qualified as a "crime of violence" under §9714(g). Accordingly, this court did not err by imposing the mandatory minimum sentence under §9714(a)(1), and the sentence in this case should be upheld.

## I.  **FACTUAL BACKGROUND**

On July 31, 2014, at approximately 5:00 a.m., the victim, Kevin Miller, went to the Valero Gas Station in Homestead to purchase food before heading to work that morning. (Jury Trial Transcript, Volume 1 ("TT1"), 8/11/15- 8/14/15 and 8/18/15, p. 81). When Mr. Miller walked into the store, he saw two (2) black men at the counter, and he noticed that they were looking at him in an unusual manner. (TT1, pp. 81 -82, 106-07, 117). He had never seen these men before, but during trial he identified [Appellant] as one of the men looking at him at the gas station that morning. (TT1, pp. 82-83, 105).

While at the Valero, Mr. Miller walked past [Appellant] and the other man, who was later identified as Tyrique Calloway, to find the items that he sought to purchase. (TT1, p. 82). When he approached the register to make payment, he saw that the men were still at the counter. (TT1, pp. 82, 107). [Appellant] and Mr. Calloway subsequently exited the store, and Mr. Miller paid for his items and walked out into the parking lot. (TT1, p. 83). Mr. Miller noticed that [Appellant] and Mr. Calloway were standing by a black SUV that was parked by one of the gas pumps. (TT1, pp. 84, 108). Mr. Miller instinctively began walking in the opposite direction to avoid walking past the men. (TT1, pp. 84, 107-08, 117-18).

Mr. Miller was approximately thirty (30) yards from the gas station when he noticed the black SUV accelerate to approach him. (TT1, pp. 85-86, 108). He saw [Appellant] sitting in the passenger seat of the vehicle. (TT1, pp. 85-86). [Appellant] exited the vehicle and was holding what appeared to be an

assault rifle. (TT1, pp. 86-88). The weapon was large and dark, and it appeared to have a sawed off barrel. (TT1, pp. 86-87). [Appellant] aimed the weapon at Mr. Miller, prompting Mr. Miller to turn and attempt to flee. (TT1, pp. 88, 108). However, as he tried to run, Mr. Miller stumbled and fell to the ground. (TT1, pp. 88, 108). Both [Appellant] and Mr. Calloway were on top of Mr. Miller after he fell. (TT1, p. 89).

[Appellant] pointed the weapon at Mr. Miller's face and asked him if he had a gun. (TT1, pp. 91, 108). Mr. Miller replied that he was unarmed, and [Appellant] then asked him where he had his money. (TT1, p. 91). Mr. Miller told [Appellant] that he did not have any money, but [Appellant] said "no, I think you were just at the store ... do you want me to shoot you ?" (TT1, p. 91). Mr. Miller told [Appellant] that he had a debit card, and [Appellant] asked him where an ATM machine was located. [Appellant] still had the weapon pointed at Mr. Miller during this verbal exchange. (TT1, pp. 91-92). Mr. Miller indicated that the Valero had an ATM machine, but [Appellant] replied that "we're not going back to that store." (TT1, p. 91). [Appellant] then pulled Mr. Miller off the ground and told him to get into the vehicle or he was going to be shot. (TT1, p. 92). Mr. Miller was forced into the vehicle at gun point and was instructed to get in the back seat area and face down. (TT1, pp. 92, 109). [Appellant] sat in the back of the vehicle with Mr. Miller, and Mr. Miller felt the weapon digging into his ribs as he was lying face down on the floor in the back of the car. (TT1, pp. 92-93).

While they were driving in the car, [Appellant] kept demanding that Mr. Miller tell him the location of a nearby ATM Machine. (TT1, p. 93). [Appellant] threatened Mr. Miller in order to prompt an answer to his question, stating "do you want me to kill you?" [Appellant] further threatened Mr. Miller, asking him if he had a girlfriend or children that he ever wanted to see again. (TT1, p. 93). Mr. Miller never answered the questions about the ATM location, but then he suddenly felt the car stop. [Appellant] instructed Mr. Miller to exit the vehicle, and he did so, not knowing where they were. (TT1, p. 93). [Appellant] demanded Mr. Miller's ATM card, and, as he pulled his wallet from his back pocket, [Appellant] snatched the wallet from his hands. (TT1, pp. 94, 110). [Appellant] still had the weapon pointed at Mr. Miller as they walked towards the store, and [Appellant] made clear that he was going to shoot Mr. Miller if he did not cooperate. (TT1, p. 94). [Appellant] stayed outside of the store while Mr. Calloway escorted Mr. Miller into the store. (TT1, pp. 95-96).

When he walked into the store, Mr. Miller realized that he was inside of a BP station because he recognized one of the store clerks. (TT1, pp. 93-95, 113). Mr. Miller went to the ATM machine and tried to stall while making the transaction, although, with Mr. Calloway's "assistance," he eventually retrieved. $100. (TT1, pp. 95, 97, 114, 128). Mr. Calloway took the money from the ATM machine and returned the debit card to Mr. Miller. (TT1, pp. 98, 114, 129).

The two men walked out of the store to where [Appellant] was waiting, still holding his weapon. (TT1, p. 98). [Appellant] said "let's go," and the three men started walking towards the back of the store. (TT1, p. 98). They approached a guard rail, and Mr. Miller saw that there were train tracks approximately seven (7) feet below the railing. (TT1, p. 99). [Appellant] told Mr. Miller to jump over the rail and walk the tracks, which went in the opposite direction of Mr. Miller's home. (TT1, pp. 99, 114-15). Mr. Miller complied, believing that he was about to be shot. (TT1, pp. 99-100). Mr. Miller did not have his phone with him at this point because [Appellant] had taken it from him as they were walking. (TT1, pp. 100, 112). After walking for some time, Mr. Miller made his way back towards Homestead and ran into a friend who called the police for him. (TT1, pp. 101, 115).

Mr. Miller reported to the police the events that had occurred that morning. (TT1, pp. 101-02). He spoke to the police again a few days later, at which time he was informed that they had found his wallet. (TT1, pp. 101-02). As a result of the incident, Mr. Miller no longer felt safe, and he was traumatized. He even moved from his residence at the time into a new residence as a result of his fear. (TT1, pp. 103-04).

After [Appellant] was arrested, he was recorded through telephone calls that he placed at the jail, instructing his friends to employ "whatever means necessary" to prevent Mr. Miller from appearing and testifying at court. (TT1, pp. 232 -233).

---

[1] [Appellant] requested an extension of time to file his concise statement because he was awaiting transcripts.

Trial Court Opinion, filed 5/31/16, at 1-8.

In his brief, Appellant presents a single question for our review:

Was the application of the "second strike" mandatory minimum sentence under 42 Pa.C.S. § 9714(a)(1) illegal in violation of [Appellant's] state and federal constitutional rights insofar as his conviction of criminal conspiracy does not qualify as a "crime of violence?"

Brief for Appellant at 5.

When determining the legality of one's sentence, this Court applies a well-settled scope and standard of review:

If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

*Commonwealth v. Poland*, 26 A.3d 518, 523 (Pa.Super. 2011) (citations omitted).

Appellant claims the trial court erred in imposing a sentence pursuant to the second-strike provision of Pennsylvania's recidivist sentencing statute, Section 9714(a)(1),[1] because his conviction for Criminal Conspiracy at

_____

[1] We are aware that the Pennsylvania Supreme Court has granted allowance of appeal in *Commonwealth v. Bragg*, 143 A.3d 890 (Pa. 2016) to determine the following issue: "Should the mandatory minimum sentence imposed by the trial court under 42 Pa.C.S.A. § 9714 be vacated, and this matter remanded for a new sentencing hearing, due to the fact that § 9714 is unconstitutional as currently drafted?" Our Supreme Court consolidated this matter with two other cases, **Commonwealth v. Macklin**, 143 A.3d 890 (Pa. 2016), which questions "[w]hether the government is required to include notice of its intent to seek a mandatory penalty under a recidivist statute within the charging document since such mandatory penalties equate to new, aggravated crimes?" and **Commonwealth v. Sachette**, 143 A.3d 890 (Pa. 2016) wherein the issue to be examined is whether "[a]ssuming arguendo the trial record supports the verdict for unlawful contact with a

*(Footnote Continued Next Page)*

Criminal Information No. 2014-11051 is not a crime of violence as defined in

Section 9714(g). Brief for Appellant at 13. Appellant opines that as he was

adjudged not guilty of Robbery but guilty of Simple Assault, the jury could

have found only that he attempted to put the victim in fear of imminent

serious bodily injury. *Id*. at 14. Appellant further reasons that:

> Under Section 9714(g), 42 Pa.C.S., in order for the crime
> of Conspiracy to Commit Robbery to constitute a "crime of

*(Footnote Continued)* ————————————

minor, is the 25 to 50 year sentence otherwise unconstitutional?" Notwithstanding, Appellant's challenge herein does not pertain to the constitutionality of Section 9714 as written, but rather concerns whether the trial court properly applied his Criminal Conspiracy conviction thereunder. In this regard, this Court has stated the following:

> In **Alleyne [v. United States**, \_\_\_ U.S. \_\_\_\_, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013)], the Supreme Court of the United States held that the Sixth Amendment requires that any fact—other than a prior conviction—that increases a mandatory minimum sentence for an offense must be submitted to the jury and proven beyond a reasonable doubt. Importantly, **Alleyne** did not overturn prior precedent that prior convictions are sentencing factors and not elements of offenses. **Alleyne**, 133 S.Ct. at 2160 n. 1; **see also Almendarez–Torres v. United States**, 523 U.S. 224, 243–44, 118 S.Ct. 1219, 1230–31, 140 L.Ed.2d 350 (1998).
>
> Section 9714 increases mandatory minimum sentences based on prior convictions. **See** 42 Pa.C.S. § 9714(a)(1). Accordingly, this section is not unconstitutional under **Alleyne**. **See Alleyne**, **supra; see also Commonwealth v. Akbar**, 91 A.3d 227, 239 n. 9 (Pa.Super. 2014), *appeal granted and order vacated on other grounds,* ––– Pa. –––-, 111 A.3d 168 (2015).

**Commonwealth v. Reid**, 117 A.3d 777, 784–85 (Pa.Super. 2015).

violence," a jury must find the defendant guilty under Section 3701(a)(1)(i), (ii) or (iii), 18 Pa.C.S. However, neither the Criminal Information nor the jury instructions on Criminal Conspiracy explicitly state this requirement. In fact, as discussed above, the jury found [Appellant] not guilty of Robbery, but guilty of Simple Assault. Thus it is not clear whether the jury made the necessary finding to trigger the imposition of the "second strike" statute.

For this reason, [Appellant's] current conviction for Criminal Conspiracy cannot qualify as a "crime of violence" and thus should not properly be considered as a second strike triggering the application of the mandatory minimum sentence in this matter as the same lacks specificity in its charge. *See Commonwealth v. Gunn*, 803 A.2d 751 (Pa.Super. 2002).

*Id*. at 14-15.

42 Pa.C.S.A. § 9714(a), provides, in relevant part, that mandatory minimum sentences are to be imposed upon certain repeat offenders as follows:

Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

42 Pa.C.S.A. § 9714(a)(1).

42 Pa.C.S.A. § 9714(g) defines a crime of violence as, *inter alia*, a robbery as defined under 18 Pa.C.S.A. § 3701(a)(1)(i), (ii), or (iii), and indicates that inchoate crimes like "criminal attempt, criminal conspiracy or

criminal solicitation to commit . . . any of the offenses listed above constitute[] [] crime[s] of violence." 42 Pa. C.S.A. § 9714(g).

Count One of the Criminal Information filed at No. 2014-11051 charged Appellant with Robbery- Serious Bodily Injury under 18 Pa.C.S.A. 3701(a)(1)(i) or (ii) and graded the offense as a first-degree felony. [2] Count Six thereof charged Appellant with Criminal Conspiracy and indicated that "with the intent of promoting or facilitating the crime(s) charged above, [Appellant] conspired and agreed with Tyrique Calloway that they, or one or more of them, would engage in conduct constituting such crimes. . . . " The overt act pertaining to the charge of Criminal Conspiracy states that Appellant "took United States Currency from Kevin Miller by threat of force. . . ." In addition, at the conclusion of trial, the trial court instructed the jury generally that Appellant had been charged with Criminal Conspiracy "in each information," and specifically stated that "[t]he information at No.

---

[2] These Subsections provide:

> (1)    A person is guilty of robbery if, in the course of committing a theft, he:
>
>    (i)    inflicts serious bodily injury upon another;
>
>    (ii)    threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(i), (ii).

201411051 alleges that [Appellant] engaged in a conspiracy to commit robbery and kidnapping." N.T. Trial, 8/14/15, at 413.

Moreover, while Appellant makes no mention of this fact, as the Commonwealth notes in its appellate brief, the certified record contains the jury's verdict slip. Count 6 thereof asked the jury to consider the charge of Criminal Conspiracy as it related only to Robbery and Kidnapping and reads as follows:

Guilty:  COUNT 6:  Criminal Conspiracy

Guilty      :Robbery

Not Guilty   :Kidnapping

Appellant clearly was charged with, and acquitted of, Robbery under 18 Pa.C.S.A. §§ 3701(a)(1)(i) or (ii), and there cannot be any dispute that these Subsections constitute felonies of the first degree. Indeed, Appellant was neither charged with nor prosecuted under any other subsections of the Robbery statute. Contrary to Appellant's argument, the trial court correctly determined the jury was presented only with qualifying sections of the Robbery statute that involved the threat of and/or fear of serious bodily injury; therefore, it could have convicted Appellant only of Criminal Conspiracy to commit Robbery as a felony of the first degree. Appellant received a ten-year mandatory minimum sentence for this conviction pursuant to 42 Pa.C.S.A. § 9714(a) due to a prior conviction for robbery of a motor vehicle. As there was no ambiguity concerning Appellant's conviction

of Criminal Conspiracy to commit Robbery, his reliance on *Commonwealth v. Gunn*, 803 A.2d 751 (Pa.Super. 2002), is inapt. Therein, a panel of this Court vacated the appellant's sentence upon concluding the trial court had erred in sentencing the appellant to an increased term under Section 9714 in light of the Commonwealth's failure to provide any evidence that the appellant previously had been convicted of two crimes of violence as defined by that statute. *Id*. at 753.

In light of the foregoing, the trial court properly considered Appellant's Criminal Conspiracy conviction to be a crime of violence under 42 Pa.C.S.A. § 9714(g) and applied the mandatory minimum sentence under Section 9714(a)(1). Thus, Appellant's challenge to the legality of his sentence is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2016