J-S88037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANTOINE WIDEMAN, | : | |
| | : | |
| Appellant | : | No. 568 EDA 2016 |

Appeal from the Judgment of Sentence October 2, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011679-2014

BEFORE: OLSON, RANSOM, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 16, 2017**

Antoine Wideman (Appellant) appeals from the judgment of sentence imposed following his convictions for aggravated assault, simple assault, recklessly endangering another person, criminal conspiracy to commit aggravated assault, robbery, possession of an instrument of crime, and violations of the Uniform Firearms Act, 18 Pa.C.S. §§ 6101-6127. We affirm.

The trial court aptly set forth the relevant factual and procedural history of this case as follows.

> On July 15, 2014, at 4:30 Jane Piersall was taking several bags out of her vehicle following a shopping trip. As she was unloading her vehicle, Piersall observed [Appellant], another male and two women walking toward her vehicle. Realizing that that her wallet and cell phone were inside the vehicle, which had its windows down, she yelled to the four people "to get the 'F' away from" her vehicle. The four persons — including [Appellant] — "started being indignant" and "smart" to Piersall. The four persons — including [Appellant] — also were trying to surround

*Retired Senior Judge assigned to the Superior Court.

her. Piersall then said, "can y'all like move from in front of my house." In response, [Appellant] said, who the 'F' you talking to, I ain't 'F'ing going nowhere." Piersall replied, "I need you to move from in front of my house."

In response this exchange of words, the women started to laugh. [According to Piersall, Appellant] then told the other male that he was "about to stroll [her]; basically he about to beat [her] up." At this point, Piersall tried to defuse the situation. As she was trying to "calm the situation down," [Appellant] snatched Piersall's phone from her left hand. The four persons — including [Appellant] — started to laugh at Piersall and then walked off as a group. As they walked off, the other male told her, "We going to see you again," lifted up his shirt and made a motion as if he was showing her a small handgun in his waistband. Piersall observed a small bulge on the male's waist.

Piersall returned to her house where her daughters were inside. Piersall and her daughters then went outside to look for the four persons so that she could make a full police report. A few blocks from her house, Piersall observed [Appellant] who was now standing across the street from her. [Appellant] taunted Piersall, who started to call the police with her daughter's cell phone. In response, [Appellant] crossed the street and hit her in the face with a small, black handgun. After hitting her with the handgun, [Appellant] threw two punches with a closed fist to her head. As [Appellant] was punching Piersall, the other male and two women came from behind [Appellant], rushed at Piersall and started to punch and kick her. Piersall's daughters were also assaulted by the group. The assault ended only when [Appellant] and the three other persons heard the sounds of police sirens. Following the assault, Piersall went to Einstein Hospital where she was treated for injuries to her face, wrist and arm.

Trial Court Opinion, 6/7/2016, at 1-2.

This case proceeded to a non-jury trial, after which Appellant was convicted of 14 offenses. On October 2, 2015, Appellant was sentenced to an aggregate term of 51 to 102 months of incarceration, followed by three

years of probation. The court also ordered Appellant to pay $150 in restitution to Piersall. N.T., 10/2/2015, at 23-24.

The order of restitution was not included in the contemporaneous written order filed on October 2, 2015. On October 5, 2015, the trial court corrected this clerical error through an amended written sentencing order which included the order of restitution. On October 13, 2015, Appellant, through counsel, timely filed a post-sentence motion seeking reconsideration of his sentence, which was denied by the trial court on January 15, 2016. This timely-filed appeal followed. Both Appellant and the trial court have complied with the requirements of Pa.R.A.P. 1925.

On appeal, Appellant challenges the sufficiency of the evidence presented at trial to convict him of criminal conspiracy to commit aggravated assault.[1] Appellant's Brief at 6. We address this issue mindful of our well-settled standard of review.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was

---

[1] In his brief, Appellant also challenges the discretionary aspects of his sentence, Appellant's Brief at 21-28; however, this issue does not appear in his statement of questions involved or his summary of the argument, Appellant's Brief at 6, 15, and is, therefore, waived. Pa.R.A.P. 2116(b) (stating that "An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall include any questions relating to the discretionary aspects of the sentence imposed (but not the issue whether the appellate court should exercise its discretion to reach such question) in the statement required by paragraph (a). Failure to comply with this paragraph shall constitute a waiver of all issues relating to the discretionary aspects of sentence.").

sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Taylor*, 137 A.3d 611, 614 (Pa. Super. 2016) (citation

omitted).

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he ... agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime ... or ... agrees to aid such other person or persons in the planning or commission of such crime[.]

18 Pa.C.S. § 903(a).

Circumstantial evidence [of criminal conspiracy] can include, but is not limited to, the relationship between the parties, the knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.  These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail. Aggravated assault, the crime underlying [a]ppellant's conspiracy conviction, occurs when a person attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting an extreme indifference to the value of human life.

*Commonwealth v. Thomas*, 65 A.3d 939, 943–44 (Pa. Super. 2013)

(citations and quotation marks omitted).

In [*Commonwealth v.*] *French*, [578 A.2d 1292,] 1293–94 [(Pa. Super. 1990),] four defendants were convicted of various crimes, including criminal conspiracy to commit aggravated assault. The group included two siblings and their paramours. *Id.* at 1293. The four defendants assaulted a lone man, pinned him to the ground, and continued to beat him. *Id.* When police arrived at the scene, the four defendants turned

their attack against the officers. *Id.* We determined that all individuals involved acted as a group in concert. *Id.* at 1294. We held that "the actors' relationships and their conduct before, during and after the criminal episode established a unity of criminal purpose sufficient for the jury to find a conspiracy beyond a reasonable doubt." *Id.* at 1294–95.

In ***Commonwealth v. Poland****,* [26 A.3d 518, 519 (Pa. Super. 2011)] the defendant, along with a group of other individuals, attacked a passer-by on the subway, battering her face and knocking out one of her teeth. Together, the group fled the scene of the attack. *Id.* at 520. Shortly thereafter, the victim and a police officer identified the individuals who participated in the attack. ***Id.*** at 520. In ***Poland****,* as in ***French****,* we determined that the group of attackers had established a "unity of criminal purpose." *Id.* at 523; ***see also French****,* 578 A.2d at 1294–95. We held that acting together before, during, and after an attack on another individual suffices to show a unity of criminal purpose for purposes of sustaining a conviction for criminal conspiracy to commit aggravated assault. ***Id.***

***Thomas***, 65 A.3d at 945.

Here, Appellant's under-developed argument focuses on the nature of the second encounter with Piersall, which he argues "escalated so quickly that there was no time to enter into an agreement." Appellant's Brief at 20. This argument is unavailing. As the trial court explained,

… there is sufficient direct and circumstantial evidence to support the conviction for conspiracy to commit aggravated assault. During the first encounter with Piersall, [Appellant] acted in concert with the three other individuals: (1) the group tried to encircle Piersall while she was standing in front of her house; (2) Piersall heard [Appellant] mention to the [other] male that he intended to beat up Piersall; (3) the group walked away together laughing after [Appellant] took Piersall's cellular phone; (4) while they walked away, the other male said 'we going to see you again' and gestured toward Piersall as if he was carrying a small firearm at his waist.

During the second encounter, [Appellant] taunted Piersall, struck her face with a small, black handgun, and punched her twice in the head with a closed fist. The other male and the two females joined [Appellant's] attack on Piersall. The four individuals acted together when they punched and kicked Piersall several times. The actions of the group — including [Appellant] — went beyond their attack on Piersall as her daughters were also assaulted. The attacks were thwarted only by the sound of police sirens.

Given all of these circumstances, including that [Appellant] and the three other persons arrived together, punched and kicked Piersall together, and then left together, there was sufficient direct and circumstantial evidence to support [Appellant's] conviction for criminal conspiracy to commit aggravated assault.

Trial Court Opinion, 6/7/2016, at 3-4.

Based on the above, and our review of the record in the light most favorable to the Commonwealth as verdict winner, we conclude that the evidence, including the obvious familiarity between Appellant and the other persons who assaulted Piersall and their collective knowledge of and participation in the crime, was sufficient to sustain Appellant's conviction for criminal conspiracy to commit aggravated assault. *See Thomas*, 5 A.3d at 943–44. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/16/2017