J-S35021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MALCOLM APRANISE STATEN | : | |
| | : | |
| Appellant | : | No. 226 MDA 2023 |

Appeal from the Judgment of Sentence Entered August 31, 2022
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000772-2021

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: JANUARY 31, 2024**

Malcolm Apranise Staten appeals from the judgment of sentence imposed following his jury convictions for conspiracy to commit simple assault, conspiracy to commit aggravated assault, aggravated assault, and riot.[1] We affirm.

The trial court properly summarized the factual and procedural history, and we adopt and incorporate its summary. *See* Rule 1925(a) Op., filed 5/9/23, at 1-4. Staten's convictions arise from an assault on his former girlfriend. He committed the assault along with three females, two of whom were his sisters.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 903(a), 2702(a)(1), and 5501(1), respectively.

Following a jury trial, Staten was found guilty of all charges and the court sentenced him to an aggregate term of 92 months to 184 months' incarceration. Staten filed a post-sentence motion that the trial court denied. This timely appeal followed.

Staten raises the following issues before this Court, which we have reordered for ease of discussion:

> I. Whether the [t]rial [c]ourt erred in finding sufficient evidence for conviction for Count 2: 18 § 903 Conspiracy – Simple Assault when the Commonwealth failed to prove beyond a reasonable doubt that [Staten] had an agreement with the other Co-Defendants to commit a crime?
>
> II. Whether the [t]rial [c]ourt erred in finding sufficient evidence for conviction for Count 2: 18 § 903 Conspiracy – Simple Assault when the Commonwealth failed to prove beyond a reasonable doubt that [Staten] had an agreement with the other Co-Defendants to cause bodily injury to the victim.
>
> III. Whether the [t]rial [c]ourt erred in finding sufficient evidence for conviction for Count 5: 18 § 2702 §§ A1 – Aggravated Assault – Attempts to cause [serious bodily injury] or causes injury with extreme indifference when the Commonwealth failed to prove beyond a reasonable doubt that [Staten] had an agreement with the other Co-Defendants to commit a crime?
>
> IV. Whether the [t]rial [c]ourt erred in finding sufficient evidence for conviction for Count 5: 18 § 2702 §§ A1 – Aggravated Assault – Attempts to cause [serious bodily injury] or causes injury with extreme indifference when the Commonwealth failed to prove beyond a reasonable doubt that [Staten] engaged in conduct that constituted a substantial step toward causing serious bodily injury to Fawn Baer?

V. Whether the [t]rial [c]ourt erred in finding sufficient evidence for conviction for Count 5: 18 § 2702 §§ A1- Aggravated Assault – Attempts to cause [serious bodily injury] or causes injury with extreme indifference when the Commonwealth failed to prove beyond a reasonable doubt that [Staten's] conduct in this regard was intentional?

VI. Whether the [t]rial [c]ourt erred in finding sufficient evidence for conviction for Count 3: 18 § 2702 §§ A1 – Aggravated Assault – Attempts to cause [serious bodily injury] or causes injury with extreme indifference when the Commonwealth failed to prove beyond a reasonable doubt that [Staten] acted with the intent of promoting or facilitating the commission of the offense of Aggravated Assault?

VII. Whether the [t]rial [c]ourt erred in finding sufficient evidence for conviction for Count 3: 18 § 2702 §§ A1 – Aggravated Assault – Attempts to cause [serious bodily injury] or causes injury with extreme indifference when the Commonwealth failed to prove beyond a reasonable doubt that [Staten] solicited, commanded, encouraged, or requested the other person to commit it; or aided, agreed to aid, or attempted to aid the other person in planning or committing it?

VIII. Whether the [t]rial [c]ourt erred in finding sufficient evidence for conviction for Count 3: 18 § 2702 §§ A1- Aggravated Assault- Attempts to cause [serious bodily injury] or causes injury with extreme indifference when the Commonwealth failed to prove beyond a reasonable doubt attempted to cause serious bodily injury to Fawn Baer?

IX. Whether the [t]rial [c]ourt erred in finding sufficient evidence for conviction for Count 4: 18 § 5501 §§ 1 - Riot when the Commonwealth failed to prove beyond a reasonable doubt that [Staten] "participated" with two or more other persons in a course of disorderly conduct.

X. Was the verdict on Count 2: 18 § 903 Conspiracy – Simple Assault against the weight of the evidence

such as to shock one's sense of justice and making the award of a new trial imperative?

XI. Was the verdict on Count 3: 18 § 2702 §§ A1 – Aggravated Assault – Attempts to cause [serious bodily injury] or causes injury with extreme indifference against the weight of the evidence such as to shock one's sense of justice and making the award of a new trial imperative?

XII. Was the verdict on Count 4: 18 § 5501 §§ 1 – Riot against the weight of the evidence such as to shock one's sense of justice and making the award of a new trial imperative?

XIII. Was the verdict on Count 5: 18 § 2702 §§ A1 – Aggravated Assault – Attempts to cause [serious bodily injury] or causes injury with extreme indifference against the weight of the evidence such as to shock one's sense of justice and making the award of a new trial imperative?

XIV. Whether the [t]rial [c]ourt erred in allowing Dr. Maserati to testify when his testimony did not relate to the charge of conspiracy, did not relate to the charge of aggravated assault-attempted serious bodily injury and did not relate to the charge of riot when the jury was not charged with finding whether or not [Staten] caused a serious bodily injury?

Staten's Br. at 4-6 (renumbered, suggested answers omitted).[2]

In our discussion, we address Staten's issues in groups. Issues one through nine are addressed under the heading, "Sufficiency of the Evidence."

_____

[2] Staten's brief fails to conform with Pa.R.A.P. 2119(a) because the argument section is not divided into as many sections as there are questions presented. Nonetheless, we will review his claims since this defect does not substantially impair our review. *See **Thompson v. Thompson***, 187 A.3d 259, 263 n.1 (Pa.Super. 2018) (declining to quash appeal where the content of appellant's brief violated Pa.R.A.P. 2119(a)).

Issues 10 through 13 are addressed under "Weight of the Evidence." Issue 14 is addressed under "Admissibility of Evidence."

## SUFFICIENCY OF THE EVIDENCE

Staten challenges the sufficiency of the evidence for each of his convictions. We address each separately.

Our standard of review is as follows:

> When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt.

***Commonwealth v. Green***, 204 A.3d 469, 484 (Pa.Super. 2019). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Id.*** at 484-85 (citation omitted).

*Conspiracy to Commit Simple Assault*

Staten maintains that the Commonwealth failed to prove beyond a reasonable doubt that he had an agreement with his co-defendants to commit a crime or to cause injury to the victim. He alleges that the evidence shows that he did not know that Angela, his sister's friend, was at the scene or that he had any contact with his sister, Shakira, before the assault. He also claims that he tried to leave the scene and did not "participate or assist in the fight." Staten's Br. at 14.

The crime of conspiracy is defined as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\*\*\*

**(e) Overt act.--**No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. § 903(a). An overt act is "an act done in furtherance of the object of the conspiracy." *Commonwealth v. Gross*, 101 A.3d 28, 34 (Pa. 2014). Simple assault, the underlying crime at issue, occurs when a person "attempts to cause, or intentionally, knowingly or recklessly causes, bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1).

"[A] conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation." *Commonwealth v. Johnson*, 180 A.3d 474, 479 (Pa.Super. 2018) (citation omitted). "Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy." *Id.* (citation omitted).

Here, the trial court determined that the Commonwealth presented sufficient evidence of conspiracy to commit simple assault.

> Taken in a light most favorable to the Commonwealth, it is reasonable for a jury to infer Malcolm had an agreement with his sisters and their friend, Angela, to confront [the victim] on Washington Street and conclude [Staten] acted in furtherance of an assault on [the victim]. . . .
>
> The jury heard testimony of the communication between [Staten] and Laketta and their agreement to meet on Washington Street, the convergence of all Co-Defendant[s'] vehicles on Washington Street, and Shives' testimony that [Staten] actively prevented him from getting involved in the [i]ncident. The jury concluded that [Staten] had an agreement with at least one Co-Defendant and took an active role in allowing the assault on [the victim] to occur.

Rule 1925(a) Op. at 8, 9. We agree and, after reviewing the briefs, record, and trial court's opinion, we affirm on the basis of the trial court's opinion. **See id.** at 5-9.

*Aggravated Assault and Conspiracy to Commit Aggravated Assault*

Staten alleges that the Commonwealth failed to "prove the existence of a conspiracy" and failed to show that he "intended to cause injury that would create a substantial risk of death or that would cause serious, permanent, or protracted loss or impairment of the function of any bodily member or organ." Staten's Br. at 25.

As previously stated, to prove a criminal conspiracy the Commonwealth must show: 1) an agreement; 2) shared criminal intent; and 3) an overt act. **See Johnson**, 180 A.3d at 479. The underlying crime of aggravated assault occurs when a person "attempts to cause serious bodily injury to another, or

- 7 -

causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result . . . ." *Id.* at § 302(b)(1)(i).

Intent to cause serious bodily injury may be proven with direct or circumstantial evidence. *See Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006) (citation omitted). A defendant's intent to cause serious bodily injury may be inferred from the circumstances surrounding the attack. *See Commonwealth v. Alexander*, 383 A.2d 887, 889 (Pa. 1978). These include: 1) whether the defendant "was disproportionately larger or stronger than the victim"; 2) whether the defendant "was . . . restrained from escalating his attack upon the victim"; 3) whether the defendant had a weapon or "other implement to aid his attack"; and 4) any statements made by the defendant "before, during, or after the attack which might indicate his intent to inflict further injury upon the victim." *Id.*

The victim testified that Staten's sisters pulled her out of her vehicle by her legs, causing her to hit her head on the ground. The women began assaulting the victim and the victim said the beating only stopped when she heard Staten say something to the women and "they got off her[.]" N.T., Trial, 6/7/22, (Day 2), at 48-49. She also testified that when she heard sirens, her assailants left the scene.

This evidence was sufficient for the jury to infer that Staten entered into an agreement with his co-defendants to injure the victim and acted in furtherance of that goal by showing up at the victim's location and then fleeing with his co-defendants from the location after hearing police sirens. Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support the charge of conspiracy to commit aggravated assault. *See Commonwealth v. Poland*, 26 A.3d 518, 519–20, 523 (Pa.Super. 2011) (finding evidence sufficient to prove conspiracy to commit aggravated assault where defendant and others approached the victim as a group; kicked victim to the ground and continued to punch and kick the victim, knocking out a tooth; and fled the scene together); *Commonwealth v. French*, 578 A.2d 1292, 1294 (Pa.Super. 1990) (finding evidence sufficient to prove conspiracy to commit aggravated assault where defendant, defendant's boyfriend, defendant's sister, and the sister's boyfriend approached the victim together, knocked the victim to the ground, continued to beat the victim).

Staten also claims that the Commonwealth failed to prove that he intended to commit an aggravated assault or serious bodily injury. He claims the evidence shows that he was trying to "calm people down" and that the fight started because of the victim's reckless driving. Staten's Br. at 13. He notes that at some point during the incident, he returned to his vehicle and directed the driver to pull to the side of the road.

Staten's aggravated assault conviction was based on the theory of accomplice liability. Accomplice liability is defined, in relevant part:

> A person is an accomplice of another person in the commission of an offense if: (1) with the intent of promoting or facilitating the commission of the offense, he: (i) solicits such other person to commit it; or (2) aids or agrees or attempts to aid such other person in planning or committing it . . . .

18 Pa.C.S.A. § 306(c). "Accomplice liability requires only aid, not an agreement." *Commonwealth v. Jordan*, 212 A.3d 91, 95 (Pa.Super. 2019). "[A] shared criminal intent between the principal and his accomplice may be inferred from a defendant's words or conduct or from the attendant circumstances." *Commonwealth v. Le*, 208 A.3d 960, 969 (Pa. 2019). Mere presence at the scene of a crime is insufficient. *See Commonwealth v. Adams*, 39 A.3d 310, 324 (Pa.Super. 2012).

Here the court determined that the evidence sufficiently established Staten's liability as an accomplice and as such determined that his conviction for aggravated assault was sufficiently supported by the evidence.

> We find it reasonable for the jury to find [Staten] either gathered or agreed to aid his Co-Defendants in the Washington Street Incident. [Staten] was the only participant who knew [the victim's] location and shared it with at least one Co-Defendant. T.P., 6/14/22 at p. 33. [Staten] had at least one verbal altercation with Barbour and [the victim] earlier in the day that resulted in him threatening them both. T.P., 6/7/22 at p. 24 and T.P., 6/9/22 at p. 9. He was the only Co-Defendant who had any disagreement with [the victim] prior to the [i]ncident.

Rule 1925(a) Op. at 13.

The court further concluded that the evidence showed Staten prevented a witness from intervening in the fight and that Staten never called the police. Additionally, once Staten and his co-defendants heard police sirens, they all

drove away from the scene. At no point during the assault did Staten attempt to stop his sisters and their friend from assaulting the victim or try to aid the victim, while his sisters kicked and punched her in the head and torso. **See** N.T., Trial, (Day 2), at 49, 50. Furthermore, the victim testified that the assault did not stop until Staten "said something" to her attackers. **See id.** at 48-49. The evidence was sufficient to sustain this conviction.

*Riot*

Staten claims that the Commonwealth failed to prove beyond a reasonable doubt that he "engaged in fighting or threatening, or violent or tumultuous behavior" when he blocked the victim's car and stopped the other vehicles in the middle of the street. Staten's Br. at 21-22. He also maintains that the Commonwealth failed to prove that he "acted with intent to commit or facilitate the commission of a felony or misdemeanor." **Id.** at 22. He argues that the Commonwealth failed to prove that he took a substantial step towards causing serious bodily injury to the victim or that his conduct was intentional. Additionally, he alleges that there was no evidence that he directed anyone, verbally or otherwise, to attack the victim.

A person is guilty of riot if the person "participates with two or more others in a course of disorderly conduct: . . . with intent to commit or facilitate the commission of a felony or misdemeanor[.]" 18 Pa.C.S.A. § 5501(1). To prove that the defendant engaged in disorderly conduct, the Commonwealth must show that the defendant "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, . . . engage[d] in

fighting or threatening, or in violent or tumultuous behavior[.]" *Id.* at § 5503(a)(1).

Since we conclude that there was sufficient evidence of the felony crime of aggravated assault, the only question that remains is whether Staten engaged in disorderly conduct with two or more individuals. Here, the trial court determined that "[t]aking the evidence in the light most favorable to the Commonwealth establishes [Staten's] participation in a course of activity which constituted disorderly conduct" and that he committed his additional crimes with his three co-defendants. Rule 1925(a) Op. at 17. The court made note of the following evidence:

> The testimony of [the victim], Barbour, Shives, Stull, and [Staten] all corroborate that [Staten] was present on Washington Street when the [i]ncident occurred. In addition to the [i]ncident occurring in broad daylight and in the middle of a borough neighborhood and public street, the [i]ncident interfered with the flow of traffic. T.P., 6/10/22 at p. 8-9, T.P., 6/7/22 at p. 2220-222, T.P., 6/9/22 at p. 24-25. The [v]ideo shows an uninvolved motorist had to maneuver around the vehicles blocking [the victim's] car. *See* Commonwealth's Exhibit 1 at 00:00:25. Onlookers who observed the [i]ncident were worried about the child in the rear seat of [the victim's] car. T.P., 6/7/22 at p. 221 and T.P., 6/10/22 at p. 4. While there is no evidence presented that [Staten] took an active role in striking [the victim] or her vehicle, [Staten] prevented at least one bystander from approaching the scene of the [i]ncident to assist [the victim] and [Staten] was yelling at [the victim's] vehicle along with Co-Defendants. T.P., 6/10/22 at p. 4-5. These actions disrupted peace and dignity in the community and created a level of public unruliness which meets the definition of disorderly conduct.

*Id.* at 16. We agree with the sound reasoning of the trial court and affirm on this basis. *See* Rule 1925(a) Op. at 14-17.

## WEIGHT OF THE EVIDENCE

In his weight argument, Staten maintains that "[t]he evidence on all counts is so weak and inconclusive" and that the Commonwealth's witnesses and evidence "were inconsistent and incredible." Staten's Br. at 26.[3] He notes specific inconsistencies in the Commonwealth witness's testimony and maintains that the victim and another witness "testified to a wild and fantastic chase," and claims that their testimony was "completely unreliable." *Id.* Staten suggests that his testimony in comparison to the Commonwealth's evidence was credible, truthful, and accurate.

When reviewing a weight challenge, we review the trial court's discretion "in finding that the jury verdict did not shock its conscience." *Commonwealth v. Johnson*, 192 A.3d 1149, 1152 (Pa.Super. 2018) (citation omitted). Assessing the weight of the evidence is within the exclusive purview of the fact-finder, "who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Id.* (citation omitted).

Here, the trial court determined that the jury, as fact-finder, could resolve any inconsistencies, was free to accept the Commonwealth's witness's

---

[3] Staten challenges the weight of the evidence "on all counts." Staten's Br. at 26. However, as the trial court concluded, any challenge to the count of aggravated assault is waived for failure to raise it in his Rule 1925(b) Statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived"); Rule 1925(b) Statement, filed 3/1/23; Rule 1925(a) Op. at 18 n.8.

testimony and afford the proper weight to any evidence of bias on the part of the witnesses. After reviewing the briefs, record, and trial court's opinion, we affirm on the basis of the trial court's opinion. *See* Rule 1925(a) Op. at 18-22. The trial court did not abuse its discretion in finding that the jury's verdict did not shock its conscience.

## ADMISSIBILITY OF EVIDENCE

In his final claim, Staten maintains that the trial court erred when it allowed Dr. Maserati to testify regarding his treatment of the victim. He also claims that Dr. Maserati's "testimony, use of spinal models and diagnosis of the victim were all highly prejudicial" and "tended to inflame the jury into making a decision based on something other than the legal proposition relevant to the case[.]" Staten's Br. at 31. He notes that Dr. Maserati was not qualified as an expert witness and did not testify as to the cause of the victim's injuries. As such, he maintains that the doctor's testimony was "wholly irrelevant and served only to prejudice [Staten]." *Id.* at 29. He further claims his testimony was irrelevant because it was not related to the charges of conspiracy, aggravated assault, or riot.

The admission of evidence is within the discretion of the court and will only be reversed upon an abuse of that discretion. *See Commonwealth v. Mosley*, 114 A.3d 1072, 1081 (Pa.Super. 2015). An abuse of discretion occurs when the court's "judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality,

- 14 -

prejudice, bias or ill will." **Commonwealth v. Kinard**, 95 A.3d 279, 284 (Pa.Super. 2014) (*en banc*) (citation omitted).

The trial court found this claim meritless because Staten failed to make a timely objection to Dr. Maserati's testimony. We agree. **See** Rule 1925(a) Op. at 22-29. As the trial court pointed out, Staten did not lodge a relevancy objection until after Dr. Maserati had given a significant amount of testimony about his medical experience and employment, the surgery he performed on the victim, the scans and imaging that he ordered and reviewed, and each of the visits he had with the victim. Furthermore, Staten did not object at trial that Dr. Maserati's "testimony, use of spinal models and diagnosis of the victim," "tended to inflame the jury[.]" Therefore, this issue is waived. **See** N.T., 6/8/22, (Day 3), at 77-95; Pa.R.A.P. 302(a); **Commonwealth v. Rodriguez**, 174 A.3d 1130, 1145 (Pa.Super. 2017). We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/31/2024

- 15 -

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA -- FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | Criminal Action |
| | : | |
| | : | |
| | : | |
| v. | : | No. 772-2021 |
| | : | |
| Malcolm Staten, | : | |
| Defendant | : | Honorable Mary Beth Shank |

## OPINION *sur* Pa.R.A.P. 1925(a)

Before Shank, J.

Filed MAY 0 9 2023

Clerk

**IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA -- FRANKLIN COUNTY BRANCH**

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | Criminal Action |
| | : | |
| | : | |
| | : | |
| v. | : | No. 772-2021 |
| | : | |
| | : | |
| Malcolm Staten, | : | |
| Defendant | : | Honorable Mary Beth Shank |

## OPINION

On March 7, 2021, law enforcement officers responded to reports of a possible fight (hereinafter "Incident") that occurred in the area of East Washington Street in Chambersburg, Franklin County. As paramedics tended to Fawn Baer (hereinafter "Fawn"), she advised law enforcement that Defendant Malcolm Staten and three females, Shakira Staten, Laketta Staten, and Angela Douglas[1], were responsible for the injuries she sustained. Transcript of Proceedings of Jury Trial - June 10, 2022 ("T.P., 6/10/22") at p. 80-81.

Leading up to the Incident, three men invaded Malcolm's home sometime between the late hours of March 6, 2021, and early morning of March 7, 2021. The men kicked in Malcolm's front door and suddenly left. T.P., 6/14/22 at p. 11-13. After they left, Malcolm walked directly to Fawn's

---

[1] Hereinafter Malcolm Staten, Laketta Staten, Shakira Staten and Angela Douglas will be referred to individually by their first names and collectively as "Co-Defendants". Malson Staten is also referred to as "Defendant."

house where he observed the men speaking with her. Id., at p. 13. Malcolm recorded the men speaking to Fawn through her window and sent the video to his sister[2] and "a bunch of people." Id. at p. 15. Malcolm testified it was not his first thought to call law enforcement to report the break-in because he does not trust police. Id. at p. 17.

The following morning, Fawn and her friend Asheyla Barbour (hereinafter "Barbour") encountered Malcolm in front of his home where a verbal exchange took place. Id. at p. 18-19 and T.P., 6/9/22 at p. 9. After the verbal altercation, Fawn and Barbour left the area. T.P., 6/9/22 at p. 9 and T.P., 6/14/22 at p. 20. Malcolm called Fawn through Facebook and an argument ensued about the men who broke into Malcolm's home. T.P., 6/14/22 at p. 28-30. Fawn and Malcolm agreed to meet on Washington Street so Fawn could explain the previous night's events. Id. at p. 30.

While en route to Washington Street, Laketta contacted Malcolm and he informed her of his meeting with Fawn. Id. at p. 33. Laketta expressed her belief that Malcolm was being set up and informed him she would be there "in case something happened," to which Malcolm responded "Okay." Id.

Fawn and Barbour testified to being followed and to attempts of Co-Defendants to box in their vehicle as they traveled to Washington Street.

---

[2] The testimony is not clear as to which of Malcolm's sisters/Co-Defendants he sent the video to.

2

T.P., 6/7/22 at p. 31-32 and T.P., 6/9/22 at p. 13-14. Shakira also contacted Barbour through Angela's Facebook account and threatened Fawn and Barbour with violence. T.P., 6/9/22 at p. 18. Barbour testified "they were going to get us. They were going to fight us, beat us up." Id. at p. 18-19.

The first confrontation occurred on Washington Street when Malcolm questioned babysitter Heather Stull (hereinafter "Stull") why the daughter he shares with Fawn was with her. T.P., 6/14/22 at p. 33. Malcolm proceeded to drive north on Washington Street where the Incident ensued. T.P., 6/9/22 at p. 63.

Video of the Incident (hereinafter "Video") shows Fawn's vehicle being boxed in by three vehicles occupying Co-Defendants along Washington Street. Malcolm, Laketta, Shakira, and Angela exited the vehicles and approached the passenger side of Fawn's car, where she was seated as a passenger. *See* Commonwealth Exhibit 1 at 00:00:17. Although the Video does not document every exchange between Fawn and Co-Defendants, a commotion can be seen on the far side of Fawn's car resulting in her body dropping to the ground. Id. at 00:00:45. The Co-Defendants re-enter their vehicles and leave the scene once sirens are heard. T.P., 6/7/22 at p. 50.

Malcolm was charged with Conspiracy to Commit Simple Assault[3], Aggravated Assault[4], Riot[5], and Conspiracy to Commit Aggravated Assault[6]. Trial commenced on June 6, 2022, and on June 15, 2022, the jury found him guilty on all charges. Defendant was sentenced to an aggregate sentence of incarceration in a state correctional institution of 162 months to 344 months.

On September 12, 2022, Malcolm filed his *Motion for Post-Sentence Relief* (hereinafter "Motion"). We denied Malcolm's *Motion* by *Opinion and Order of Court* dated January 10, 2023.

On February 8, 2023, Malcolm filed his *Notice of Appeal.* We directed him to submit his *Concise Statement of Matters Complained of on Appeal* (hereinafter "Statement") and he timely complied. We acknowledge the late filing of this Opinion with an apology to parties and the Superior Court.

## ISSUES

Defendant raises three issues:

1. **Whether the lower court erred in denying Defendant's motion for judgment of acquittal where the Commonwealth presented insufficient evidence to support Defendant's convictions of Conspiracy to Commit Simple Assault, Aggravated Assault, Riot, and Conspiracy to Commit Aggravated Assault.**

2. **Whether the lower court erred in denying Defendant's motion in arrest of judgment where his guilty verdicts for Conspiracy**

---

[3] 18 Pa.C.S.A. § 903.
[4] 18 Pa.C.S.A. § 2702 (A)(1).
[5] 18 Pa.C.S.A. § 5501 (1).
[6] 18 Pa.C.S.A. § 903 (A)(1).

4

to Commit Simple Assault, Riot, and Conspiracy to Commit Aggravated Assault were against the weight of the evidence.

3. **Whether the lower court erred in allowing Dr. Maserati's testimony to be presented at trial.**

## DISCUSSION

### 1. Sufficiency of the Evidence

A sufficiency of the evidence claim is a question of law and the standard of review is well settled:

> ...[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated, and all evidence actually received must be considered. Finally, the finder of fact while passing upon the

5

> credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

Commonwealth v. Mucci, 143 A.3d 399, 408–09 (Pa. Super. 2016)

### a. The Commonwealth produced sufficient evidence to support Defendant's conviction for Conspiracy to Commit Simple Assault.

To uphold a conviction for conspiracy to commit simple assault, the Commonwealth must prove beyond a reasonable doubt that Malcolm intended to commit or aid in the commission of the crime of simple assault. Criminal conspiracy requires proof of:

> 1) an intent to commit or aid in an unlawful act; 2) an agreement with a co-conspirator; and 3) an overt act in furtherance of the conspiracy. Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, i.e, the relations, conduct, or circumstances of the parties or overt acts on the part of the co-conspirators.

Commonwealth v. Galindes, 786 A.2d 1004, 1010 (Pa. Super. 2001).

Here, conspiracy to commit simple assault requires the co-conspirators to cause bodily injury intentionally, knowingly, or recklessly to Fawn.

Malcom argues there was no agreement between himself, Shakira, Laketta, and Angela to cause bodily injury to Fawn and thus the evidence was insufficient to convict him of any criminal conspiracy. Defendant's

6

*Statement* at p. 1. In support of his claim, Malcolm highlights there was no direct evidence he had any contact with Shakira or Angela before the incident on Washington Street. Defendant's *Motion* at p. 3. He argues he only had contact with Laketta while he was en route to Washington Street. Id. Malcolm also asserts he had no prior relationship with Angela. T.P., 6/14/22 at 11.

Malcolm testified that he told Laketta he was meeting with Fawn on Washington Street and Laketta informed him she was going with him in case anything happened. T.P., 6/14/22 at 33. Fawn and Barbour[7] testified Malcolm told them that he "had something for them" during the altercation in front of his home. T.P., 6/7/22 at 24 and T.P., 6/9/22 at 9. The jury could reasonably rely on this exchange to infer that Malcolm was threatening Fawn and Barbour and arranged for at least one Co-Defendant to be present when he met with them.

The Commonwealth presented evidence that, at the time of the incident, Malcolm was in the first vehicle that arrived on Washington Street, boxing in the left side of Fawn's vehicle, followed by Laketta who pulled in directly behind Fawn's vehicle. T.P., 6/9/22 at p. 20-24. Fawn testified Malcolm exited the passenger seat of his vehicle, approached her vehicle, and

---

[7] Barbour was the driver of Fawn's vehicle at the time of the Incident.

7

began yelling at her. T.P., 6/7/22 at p. 44. Fawn testified she had no previous disagreements with Angela, Shakira, or Laketta; her only disagreement was with Malcolm. T.P., 6/7/22 at p. 55. As such, any Co-Defendant's motive for assaulting Fawn could be reasonably inferred by the jury to have come from Malcolm and his relationship with Fawn.

Malcolm argues he re-entered his vehicle to leave the scene; however, the vehicle he was in stopped a second time blocking the vehicle carrying Fawn and preventing it from leaving the scene. Id., at p. 45. Paul Shives (hereinafter "Shives"), a neighbor and bystander who approached the scene when he heard the vehicles colliding, testified Malcolm prevented him from getting involved as he approached the Incident. T.P., 6/10/22 at p. 8-9. Shives testified that as the three females were still beating on the vehicle, Malcolm told him to "go about [his] business." Id., at p. 12.

Taken in a light most favorable to the Commonwealth, it is reasonable for a jury to infer Malcolm had an agreement with his sisters and their friend, Angela, to confront Fawn on Washington Street and conclude Defendant acted in furtherance of an assault on Fawn. The jury was properly instructed on direct and circumstantial evidence as follows:

> THE COURT: On one hand there is direct evidence which is testimony by a witness from his or her own personal knowledge such as something he or she saw or heard himself or herself. The

8

other type is circumstantial evidence which is testimony about facts which point to the existence of other facts which are in question.

...

Whether or not circumstantial evidence is proof of other facts in question depends in part on the application of human common sense and human nature. In deciding whether or not to accept circumstantial evidence of proof of the facts in question you must, first, be satisfied that the testimony of the witness who is presenting the circumstantial evidence is truthful and accurate and, second, that the existence of the facts the witness testifies to leads to the conclusion that the facts in question also happened.

T.P. 6/15/22 at p. 149.

The jury heard testimony of the communication between Defendant and Laketta and their agreement to meet on Washington Street, the convergence of all Co-Defendant's vehicles on Washington Street, and Shives' testimony that Malcolm actively prevented him from getting involved in the Incident. The jury concluded Malcolm had an agreement with at least one Co-Defendant and took an active role in allowing the assault on Fawn to occur. We find the evidence the Commonwealth presented as to Conspiracy to Commit Simple Assault was sufficient.

### b. The Commonwealth produced sufficient evidence to support Defendant's conviction for Aggravated Assault.

9

A defendant is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S. § 2702(a)(1).

The Commonwealth is required to show a substantial step toward causing serious bodily injury to another, accompanied by an intent to inflict serious bodily injury. 18 Pa.C.S. §2702(a). "Serious bodily injury" is defined as bodily injury which creates a substantial risk of death, or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. 18 Pa.C.S. §2301. A person acts intentionally concerning a material aspect of an offense when [...] it is his conscious object to engage in conduct of that nature or to cause such a result. 18 Pa.C.S. §302(b)(1)(i).

As set forth herein, both direct and circumstantial evidence must be considered equally when assessing the sufficiency of the evidence. Commonwealth v. Carson, 592 A.2d 1318, 1320 (Pa. Super. 1991). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by relying wholly on circumstantial evidence. Commonwealth v. Stasiak, 451 A.2d 520 (Pa. Super. 1982); citing Commonwealth v. Harper, 403 A.2d 536, 538 (Pa. 1979). Here, Malcolm testified he did not intend to injure Fawn. T.P., 6/14/22 at p. 81. Thus, any

10

additional evidence of Defendant's intent to inflict serious bodily injury must be proven with circumstantial evidence. "The intent to cause serious bodily injury may be proven by direct or circumstantial evidence." Commonwealth v. Matthew, 909 A.2d 1254, 1257 (Pa. Super. 2005).

In Commonwealth v. Alexander, 383 A.2d 887 (Pa. 1978), the Pennsylvania Supreme Court provided a non-exhaustive list of factors to consider under a totality of the circumstances test when assessing whether a defendant had the intent to inflict serious bodily injury. The Court in Matthews reaffirmed the totality of circumstances test established in Alexander as the appropriate test to apply to determine whether there is sufficient evidence to convict a defendant charged with aggravated assault for attempting to inflict serious bodily injury upon another.

One factor is evidence of a significant difference in size or strength between the defendant and the victim. Id. at 889. "The fact that the victim was attacked by a group supplies the disproportionate force factor." Commonwealth v. Glover, 449 A.2d 662, 665 (Pa. Super. 1982). A jury could reasonably consider the circumstances of a group or multiple participants in the attack as a factor in deciding that serious bodily injury was attempted against Fawn.

Here, the Commonwealth charged Malcolm with Aggravated Assault under the theory of accomplice liability; that is, he was criminally liable for

11

the actions of his Co-Defendants when the acts were undertaken in furtherance of Aggravated Assault. The statutory elements of accomplice liability are codified as such:

(a) General rule.--A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(b) Conduct of another.--A person is legally accountable for the conduct of another person when:

(1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

(3) he is an accomplice of such other person in the commission of the offense.

(c) Accomplice defined.--A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) **solicits such other person to commit it; or**

(ii) **aids or agrees or attempts to aid such other person in planning or committing it**; or

(2) his conduct is expressly declared by law to establish his complicity.

12

(d) Culpability of accomplice.--When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

18 Pa.C.S.A. §306 (emphasis added).

We find it reasonable for the jury to find Malcolm either gathered or agreed to aid his Co-Defendants in the Washington Street Incident. Defendant was the only participant who knew Fawn's location and shared it with at least one Co-Defendant. T.P., 6/14/22 at p. 33. Defendant had at least one verbal altercation with Barbour and Fawn earlier in the day that resulted in him threatening them both. T.P., 6/7/22 at p. 24 and T.P., 6/9/22 at p. 9. He was the only Co-Defendant who had any disagreement with Fawn prior to the Incident.

Further, none of the exceptions to accomplice liability apply to Malcolm:

(f) Unless otherwise provided by this title or by the law defining the offense, a person is not an accomplice in an offense committed by another person if:
    (1) he is a victim of that offense;
    (2) the offense is so defined that his conduct is inevitably incident to its commission; or

13

(3) he terminates his complicity prior to the commission of the offense and:
> (i) wholly deprives it of effectiveness in the commission of the offense; or
> (ii) gives timely warning to the law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense.

18 Pa.C.S.A. §306 (f).

Malcolm did not terminate his complicity, wholly deprive the conspiracy of its effectiveness, or notify law enforcement to stop the conspiracy. He arrived on Washington Street with at least one other Co-Defendant he testified he agreed to meet with, took steps to prevent Shives from intervening, and law enforcement was never notified by Malcolm. T.P., 6/14/22 at p. 33 and T.P., 6/10/22 at p. 8-9. Accordingly, we find that Defendant's conviction for Aggravated Assault under accomplice liability was sufficiently supported by the evidence.

### c. The Commonwealth produced sufficient evidence to support Defendant's conviction for Riot.

To find Defendant guilty of Riot, the Commonwealth must prove, beyond a reasonable doubt, that Malcolm participated with two or more others in the course of disorderly conduct:

14

1. with intent to commit or facilitate the commission of a felony or misdemeanor;
2. with intent to prevent or coerce official action; or
3. when the actor or any other participant to the knowledge of actor uses or plans to use a firearm or other deadly weapon.

18 Pa.C.S.A. §5501.

To have engaged in disorderly conduct, Malcolm must have, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, engaged in:

1. fighting or threatening or violent or tumultuous behavior;
2. making unreasonable noise;
3. using obscene language or making an obscene gesture; or
4. creating hazardous or physically offensive conditions by acts which serve no legitimate purpose of those who do them.

18 Pa.C.S.A. §5503.

Relevant here, Section 5503(d) defines "public" as affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are... any neighborhood or any premises which are open to the public.

The development of Pennsylvania case law makes clear that mere presence at a scene is not proof beyond a reasonable doubt of a person's

15

participation in a riot. <u>Commonwealth v. Reeves</u>, 387 A.2d 877 (Pa. Super. 1978).

The testimony of Fawn, Barbour, Shives, Stull, and Malcolm all corroborate that Malcolm was present on Washington Street when the Incident occurred. In addition to the Incident occurring in broad daylight and in the middle of a borough neighborhood and public street, the Incident interfered with the flow of traffic. T.P., 6/10/22 at p. 8-9, T.P., 6/7/22 at p. 220-222, T.P., 6/9/22 at p. 24-25. The Video shows an uninvolved motorist had to maneuver around the vehicles blocking Fawn's car. *See* Commonwealth's Exhibit 1 at 00:00:25. Onlookers who observed the Incident were worried about the child in the rear seat of Fawn's car. T.P., 6/7/22 at p. 221 and T.P., 6/10/22 at p. 4. While there is no evidence presented that Defendant took an active role in striking Fawn or her vehicle, Malcolm prevented at least one bystander from approaching the scene of the Incident to assist Fawn and he was yelling at Fawn's vehicle along with Co-Defendants. T.P., 6/10/22 at p. 4-5. These actions disrupted peace and dignity in the community and created a level of public unruliness which meets the definition of disorderly conduct. (*See* <u>Commonwealth v. Greene</u>, 189 A.2d 141 (Pa. 1963)).

The Pennsylvania Superior Court has held that evidence is sufficient to support a defendant's guilt of riot based on his intent to commit a

16

misdemeanor while participating with two or more others in the course of disorderly conduct. Commonwealth v. Johnson, 612 A.2d 1382, 1384 (Pa. Super. 1992). We have held Malcolm's convictions for Conspiracy to Commit Simple Assault, Aggravated Assault, and Conspiracy to Commit Aggravated Assault are sufficiently supported by the evidence and found that he committed these crimes in cooperation with three other individuals in the course of disorderly conduct. Taking the evidence in a light most favorable to the Commonwealth establishes Defendant's participation in a course of activity which constituted disorderly conduct; therefore, his challenge to the sufficiency of the evidence for Riot fails.

### a. The Commonwealth produced sufficient evidence to support Defendant's conviction for Conspiracy to Commit Aggravated Assault.

As previously set forth, the Commonwealth must prove three elements to establish a criminal conspiracy. Under this charge, the underlying crime of the conspiracy is Aggravated Assault. We found the Commonwealth presented sufficient evidence to prove Malcolm engaged in an agreement with his Co-Defendants to attempt to cause serious bodily injury to Fawn. As we have found the Commonwealth presented sufficient evidence to establish that Malcolm had the required intent to engage in criminal conspiracy and is culpable for the actions of his co-conspirators as to Aggravated Assault, we rest upon that reasoning to find that the Commonwealth presented sufficient

17

evidence to support Malcolm's conviction for Conspiracy to Commit Aggravated Assault.

## 4. **Weight of the Evidence.**

Defendant's *Statement* argues the evidence presented as to Conspiracy to Commit Simple Assault, Riot, and Conspiracy to Commit Aggravated Assault[8] was so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See* Defendant's Statement at p. 3-6. Malcolm specifically refers to four inconsistencies in testimony to illustrate the overall weak and inconclusive testimony offered: 1) Barbour and Fawn testified to a car chase wherein they were pursued by several Co-Defendants from Malcolm's apartment to Washington Street, 2) Stull and Shives[9] presented conflicting testimony as to whether they knew Barbour beforehand or had babysat for her, 3) Shives' inability to distinguish between Malcolm and the three female Co-Defendants, and 4) Barbour's messages and social media posts regarding her hatred of Malcolm and motivation to put him in jail. *See* Defendant's *Statement* at p. 3-6.

A true weight-of-the-evidence claim "concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed."

---

[8] Defendant's Concise Statement does not address the weight of the evidence as to the charge for Aggravated Assault. As such, we will not address it here and consider that claim waived.
[9] Shives is the fiancé of Stull and they share a home on Washington Street. He left their home to see what was causing the Incident.

18

Commonwealth v. Charlton, 902 A.2d 554, 561 (Pa. Super. 2006) *quoting* Commonwealth v. Galindes, 786 A.2d 1004, 1013 (Pa. Super. 2001). Such a claim only challenges how much weight should be "accorded...testimonial evidence." Commonwealth v. Morgan, 913 A.2d 906, 909 (Pa. Super. 2006).

The weight given to the evidence is wholly the province of the finder of fact "who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Hunzer, 868 A.2d 498, 506-507 (Pa. Super. 2005). Any motion for a new trial grounded in the contention that the "verdict is contrary to the weight of the evidence concedes there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." Commonwealth v. Rossetti, 863 A.2d 1185, 1191-1192 (Pa. Super. 2004), *citing* Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000).

The decision whether to grant a new trial on this basis rests within the discretion of the trial court. Commonwealth v. Hunter, 554 A.2d 550, 555 (Pa. Super. 1989). "A trial court should award a new trial on the ground that the verdict is against the weight of the evidence only when the ...verdict is so contrary to the evidence as to shock one's sense of justice and [make] the award of a new trial [] imperative so that right may be given another opportunity to prevail." Commonwealth v. Whitney, 512 A.2d 1152, 1155-1156 (Pa. 1986).

19

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witness and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence, shall not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Commonwealth v. Widmer, 744 A.2d 745, 752 (Pa. 2000).

Malcolm's challenges appear to highlight inconsistent recollection or improper motive of the Commonwealth's witnesses. "Issues of witness credibility include questions of inconsistent testimony and improper motive." Commonwealth v. Sanchez, 36 A.3d 24, 27 (Pa. Super. 2011). A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit. See Commonwealth v. Rivera, 983 A.2d 1211, 1220 (Pa. Super. 2009). Inconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence. Commonwealth v. Jacoby, 170 A.3d 1065, 1081 (Pa. 2017), citing Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013).

20

The jury was permitted to accept Fawn and Barbour's testimony that Co-Defendants followed them from Malcolm's apartment to Washington Street. Malcolm's assertion that their testimony was simply too fantastical to be true can be resolved by the jury finding Fawn and Barbour credible.

The jury could resolve any inconsistency in Stull and Shives' testimony as to whether either witness knew Barbour beforehand or whether Shives could distinguish among the four Co-Defendants, in the Commonwealth's favor. Any witness's prior knowledge of Barbour or Shives' difficulty in distinguishing Co-Defendants did not change the testimony that all Co-Defendants were present on Washington Street and participated in the attack on Fawn. T.P., 6/10/22 at p. 45-48.

Evidence of Barbour's inflammatory social media posts towards Malcolm was presented and they were permitted to afford it due weight. The jury was properly instructed as to bias:

> THE COURT: ...Did the witness have any interest in the outcome of the case, bias, prejudice, or other motive that might impact his or her testimony. How well does the testimony of the witness square with the other evidence in the case including the testimony of other witnesses. Was it contradicted or supported by the other testimony evidence.

T.P., 6/15/22 at p. 145.

21

Juries are presumed to follow a court's instructions. Commonwealth v. Naranjo, 53 A.3d 66, 71 (Pa. Super. 2012), *citing* Commonwealth v. Mollett, 5 A.3d 291 (Pa. Super. 2010). As such we assume the jury followed the trial court's instructions regarding possible bias of any witnesses and reconciled Barbour's motives in favor of the Commonwealth.

Assessing the evidence according to the standards cited above, we cannot conclude the jury's verdict shocked our sense of justice. Consequently, Malcolm's challenge to the weight of the evidence fails.

### 5. Dr. Maserati's testimony.

Defendant's final issue raised relates to the testimony of Dr. Maserati. Dr. Matthew Maserati (hereinafter "Maserati") a neurosurgeon employed by WellSpan Health, testified to the medical treatment provided to Fawn after the Incident.

Defendant complains that the trial court should have sustained his relevancy objection because Dr. Maserati's testimony did not relate to the charge of aggravated assault – attempted serious bodily injury – or the charge of riot. *Statement*, p. 6. Defendant further argues that even if the testimony were relevant, it was so prejudicial that he could not receive a fair trial. Id. at o. Finally, Defendant argues that in addition to his testimony, Dr. Maserati's use of spinal models and his diagnosis of the victim were

22

highly prejudicial, noting that from the outset the jury would not be charged with finding whether or not he caused serious bodily injury. Id. at p.

Questions concerning the admissibility of evidence are within "the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion." Commonwealth v. Thompson, 106 A.3d 742, (Pa. Super. 2014). Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied, or where the record shows that the action is a result of partiality, prejudice, bias, or ill will. Commonwealth v. Young, 989 A.2d 920, 924 (Pa. Super. 2010).

Defendant's objection to Maserati's testimony was not raised timely. A Pre-Trial Conference was held on April 28, 2022 at which time we established May 20, 2022 as the deadline for any *motions in limine*; however, the first time Defendant raised his objection to Dr. Maserati's testimony was at trial. Defendant was provided with 683 pages of medical records in advance of trial. T.P., 6/8/22 at p. 100. After sidebar commenced and some initial dialogue occurred, we questioned counsel as to the timing of the objection.

> THE COURT: Why am I just now hearing this objection halfway through testimony?
>
> ATTORNEY STOTTLEMYER: We were provided the medical records. We don't

23

necessarily have a basis to object until we -- hear what he has to say.

THE COURT: But you are objecting to everything. -- I don't understand why this is a surprise and this is coming up now. -- it sounds to me you are conceivably objecting to everything else that's potentially said. You are saying even if he's testifying to the treatment, the surgery, none of it is relevant. Why are we just discovering this now?

ATTORNEY STOTTLEMYER: I don't have a good answer for why it's coming up now, other than as I'm sitting here listening to this and asking myself why is this relevant, if they can't link this to -- the surgery to the assault --.

Id. at p. 98-99.

Even if Defendant's failure to object to Maserati's testimony was not required through the filing of a motion *in limine*, he failed to timely raise his objection during trial. Defendant did not object at the time the Commonwealth called Dr. Maserati as their witness. Id. at p. 77. Upon taking the witness stand, Maserati testified to his employment with WellSpan Health, his prior medical experience, his specialty of neurosurgery, and his education from undergraduate school through a seven-year residency. Id. at p. 78-79. He testified as to his board certification, continuing education and professional memberships. Id. at p. 79. After describing his duties as a neurosurgeon he testified that he performed surgery on Fawn Baer and saw

24

her during office visits prior to and after surgery. Id. at p. 81. Maserati next testified as to the scans and imaging ordered and reviewed by him and with no objection by Defendant, copies of medical records pertaining to Fawn's surgery were admitted, followed by the admission of imaging studies between March 7 and November 8, 2021. Id. at p. 82. Copies of Fawn's electronic medical record from visits with Maserati between March 26, 2021 and November 18, 2021 were also admitted without objection. Id. at p. 83.

Maserati next testified to his visit with Fawn on March 26, 2021 and the complaints she presented with as well as the results of his physical examination. Id. at p. 84-85. He described the presentation of kyphosis in Fawn and utilized the admitted CT scan to explain the diagnosis to the jury. Id. at p. 85. He testified as to swelling in her elbow and his recommendation that she follow up with an orthopedic surgeon. Id. at p. 87.

Maserati testified next about Fawn's May 27, 2021 office visit where the MRI of her cervical spine was reviewed, which he explained demonstrated a central disc herniation. Id. at p. 87-88. In explaining the herniation Maserati pointed to various images from the MRI which were previously admitted as exhibits with no objection. Id. at p. 88. Maserati testified about Fawn's options for treatment and considerations discussed in explaining the various options. Id. at p. 88-89.

25

Maserati next testified as to his May 27, 2021 visit with Fawn at which time she wished to explore the option of surgery. Id. at p. 90. In explaining to the jury the different ways a herniated disc can be addressed by surgery, Maserati utilized models of the cervical spine, which were not objected to at trial. Id. at p. 92-93.

Maserati next testified that surgery was performed on June 8, 2021 and utilized another model to explain the procedure. Id. at p. 93. In utilizing images from Fawn's surgery, Maserati showed screws and cadaveric bone he inserted in Fawn's neck. Id. at p. 93-94.

Maserati testified about his next visit on June 25, 2021 where her wound was checked, sutures trimmed, x-rays reviewed and advice given. Id. at p. 94. When the Commonwealth next asked Maserati about resolution of preoperative symptoms, it was only then that counsel for Defendant asked to approach for a potential objection and argument ensued which resulted in Defendant objecting to testimony of Fawn's treatment as irrelevant without a link to the Incident. Id. at p. 95. By the time Defendant lodged his relevancy objection, the stable door was closing and we were watching the backside of the horse as it galloped toward the horizon. Notwithstanding this untimely objection, lengthy argument ensued and we overruled Defendant's objection, finding Maserati's medical treatment of Fawn, including surgery, and his use

26

of exhibits in explaining his treatment was admissible to establish the link between the events on Washington Street and Fawn's injuries. Id. at p. 111.

Following our ruling, Dr. Maserati testified briefly as to the second follow-up visit at which time the direct examination was finished. Id. at p. 111-113.

The cornerstone of our waiver doctrine is that issues below not raised in a timely manner are foreclosed for purposes of appellate review. Commonwealth v. Pritchitt, 359 A.2d 786 (Pa. 1976), later proceeding 467 A.2d 364 (1983).

In Commonwealth v. Radecki, 180 A.2d 441, 455 (Pa. Super. 2018) a witness testified as to a settlement received in a medical malpractice and personal injury action. Id. at 455-456. The witness was asked about the lawsuit's basis, whether it was resolved, asked to testify about the terms of the settlement, and what the witness did with the money received. Id. At this point counsel asked to approach to raise his objection and after sidebar discussion the trial judge overruled the objection. Id. at 456. The Superior Court found that to the extent an objection was lodged regarding the settlement testimony, it was not until after the witness had finished discussing the settlement issue and how she used the funds. Id. As the objection was not timely to the introduction of testimony regarding settlement, our appellate court found the issue waived for appeal. Id. at 457.

27

We find <u>Radecki</u> analogous to the facts of the herein case in that Defendant waited until after significant, detailed testimony was presented to the jury before lodging his objection. There were plentiful appropriate opportunities missed. Exhibits offered in support of the disfavored testimony were not objected to at the time of admission. Models used in support of the disfavored testimony were not objected to before or during their use.

Notwithstanding the untimeliness of Defendant's objection, we disagree that Dr. Maserati's testimony is irrelevant. In making his objection, Defendant's counsel clarified it as follows:

> ATTORNEY STOTTLEMYER: So I'm not objecting to him being a lay or an expert witness. I'm objecting that this treatment is completely irrelevant unless they can link it to the incident on the 7th. And if they can't do that, it's irrelevant and they can't do that without opinion testimony saying, this is how this connects. Without saying this connects to the incident, this testimony is irrelevant. IT's extremely prejudicial to our clients.

<u>T.P.</u>, 6/8/2022 at 99-100.

During Fawn's direct examination she was asked "when you were at the emergency room, were there any effects on your body from the assault that you were feeling?" T.P., 6/7/22 at p. 53. Fawn responded that her neck hurt to look down, she had some cuts and scrapes and on a scale of 1-10 she

28

was experiencing level 10 pain. Id. She also testified to losing strength in her arms. Id. at p. 55.

The treatment of Fawn's injuries is relevant as it corroborates the testimony that an assault occurred at which time injuries were sustained. Maserati testified to his observations, office visits and treatment of injuries sustained by Fawn.

To the extent any error made by this court is harmless, this is not within our purview and we defer to the argument of parties and our Honorable Superior Court to make such determination.

## IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA -- FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | Criminal Action |
| | : | |
| | : | |
| v. | : | No. 772-2021 |
| | : | |
| Malcolm Staten, | : | |
| Defendant | : | Honorable Mary Beth Shank |

### ORDER OF COURT

AND NOW THIS 9th day of May, 2023, pursuant to Pa.R.A.P. 1931 (c),

**IT IS HEREBY ORDERED** the Clerk of Courts of Franklin County shall transmit to the Prothonotary of the Superior Court the record in this matter along with the attached Statement *sur* Pa.R.A.P. 1925(a).

*The Clerk of Courts shall process this Order pursuant to Pa.R.Crim.P. 114.*

By the Court

Mary Beth Shank, J.

Distribution:
   Franklin County District Attorney's Office
   Shawn Stottlemyer, Esq., *Counsel for Defendant*

Malcolm Apranise Staten                                                772-2021

May 9, 2023, I, Amy K. Hall, served a copy of the Order signed May 9, 2023 by
Mary Beth Shank, Judge, filed May 9, 2023, on the following persons by the following
method:

**Interoffice Mail**

Franklin County
District Attorney's Office

Shawn M. Stottlemyer, Esq.
Mooney & Associates

_____
Deputy Clerk